HILL *v.* MASSACHUSETTS FIRE & MARINE INSURANCE COMPANY.

4-4928

Opinion delivered February 7, 1938.

*Leo P. McLaughlin, R. M. Ryan* and *Jay M. Rowland,* for appellants.

*Emory & Ridgway* and *Verne McMillen,* for appellees.

SMITH, J. On March 11, 1930, D. B. Murry and his wife executed a mortgage upon three separate lots in the city of Hot Springs, upon each of which was a house, to secure their note to the order of J. E. Harper for $9,000. On one of the lots at 227 Plateau street, Murry and his wife operated an apartment house. Mrs. Murry died, and Murry sold this lot to E. D. Hill for $7,000. At the same time, and for the additional consideration of $2,000, Murry also sold Hill the furniture in the house. There was no sale of the other two houses and lots. The papers were prepared by the attorney for the estate of Harper, who had died, and insurance was written at the same time by an agent of three insurance companies who represented the bank where the attorney had offices as an official of the bank. These policies were written on the houses and the furniture as the property of Hill, with loss payable to the Harper estate as the interest of the estate might appear. Three insurance policies on the house sold Hill were written by three separate insurance companies, all containing the same loss payable clause, but the total amount of the insurance did not equal the balance then due on the note secured by the mortgage. No insurance was written on the other two buildings.

Separate suits were filed by Murry and Hill against each of the insurance companies to collect the respective policies. The insurance companies paid the face of the policies to the executor of the Harper estate and took a proportionate assignment of the deed of trust. The three suits on the policies were consolidated and the consolidated cause transferred to the chancery court upon the prayer of the insurance companies that they be subrogated to the lien of the mortgage, the foreclosure of which they prayed. It was alleged in the answers filed by the insurance companies that the conveyance to Hill from Murry was simulated, and not actual, and had.

been made for the false and fraudulent purpose of enabling Hill to secure insurance which Murry was unable to procure, and that after the insurance had been written, Murry caused the apartment building to be burned. The truth of this allegation is the question of fact in the case. Other points discussed are questions of law.

The testimony is voluminous and conflicting as to whether the fire was of incendiary origin, and after a careful consideration thereof we are unable to say that the affirmative finding is contrary to the preponderance of the evidence on this issue.

The theory upon which the case was defended by the insurance companies in the court below was, that, while they were liable under the policies to the mortgagee, they were not liable to either Murry or Hill, and it was upon this assumption that they paid the insurance to the mortgagee and took a proportionate assignment of the mortgage upon which they prayed subrogation and the foreclosure of the mortgage, which was then long past due.

The decree from which is this appeal granted the relief prayed, and the insurance companies were given a lien by subrogation, "which lien is second and subject to the lien of the estate of J. E. Harper (the mortgagee) for the balance due on the note and mortgage sued on herein." The insurance companies make no point that they should share ratably with the mortgagee in the proceeds of the sale of the mortgaged property pursuant to the decree ordering the foreclosure of the mortgage.

For the reversal of the decree it is insisted: (a) that the testimony does not show that the fire was of incendiary origin; (b) that not having paid the entire mortgage debt the insurance companies are not entitled to relief by way of subrogation to any extent, and (c) that in any event it was error to award this relief as against the property which was not covered by the insurance policies.

We have already stated our conclusion as to the sufficiency of the testimony to show the incendiary origin of the fire.

The contention that subrogation will not be awarded to any extent, because the entire debt secured by the mortgage was not paid, is answered adversely at § 2006b, Vol. 8, Couch's Cyclopedia of Insurance Law, p. 6623, where it is said: "And neither public policy nor positive law prevents the parties to a contract of insurance from agreeing that in case the insurer sets up that, as to the mortgagor, no liability exists, and pays the mortgagee of the insured premises, it shall be subrogated to the rights of the mortgagee as against the mortgagor to the extent of the amount so paid." Cases cited in the note to the text quoted fully sustain it, and we conclude, therefore, that it was not error to grant subrogation to the extent of the mortgage indebtedness paid although the whole thereof was not paid.

As to the right of subrogation against the lots included in the mortgage but not covered by the insurance policies, it may be said that each policy contained the following mortgage clause: "Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that as to the mortgagor or owner, no liability therefor exists this company shall, to the extent of such payment, be thereupon legally subrogated to all of the rights of the party to whom such payments shall be made, under all securities held as collateral to the mortgage debt."

Here, not only was the claim made, but the fact has been established under the decree of the court, that as to the mortgagor or owner no liability existed, in which event it was expressly agreed and contracted that the insurer should be subrogated to all of the rights of the party to whom such payments should be made under all securities held as collateral to the mortgage debt.

The mortgage covered all three of the lots, and the indebtedness thus secured has been reduced to the extent of the insurance paid to the mortgagee. In consideration of the payment of this insurance the mortgagee transferred and assigned to the insurance companies a proportionate interest in the mortgage and the debt secured by it. We know of no reason why the provision

to this effect contained in the insurance policies should not be enforced, especially so after the mortgagee had assigned that interest, a thing which could have been done for a valuable consideration, although there had been no contractual provision requiring it.

In the chapter on Assignments in 6 C. J. S., § 38, p. 1087, the law is stated to be that "The owner of an assignable claim or chose in action may, as a general rule, assign a part thereof to another, so as to entitle the assignee to the rights of a co-owner against the assignor; . . ." Numerous annotated cases are cited in the note to the text quoted. The note and the mortgage are, of course, assignable instruments. This statement is there (§ 40, p. 1088) qualified to the extent that "A court of equity, however, will not enforce rights under a partial assignment, unless it can do so without working a hardship on the debtor, and will not do so to the hardship or against the rights and equities of a subsequent assignee who has obtained the whole title." These exceptions have no application here. The interest in the debt assigned is secured by a mortgage, not only of the property which burned, but on the other two lots as well, and the right of subrogation was properly awarded against all the property embraced in the mortgage. This is no hardship against Murry. He owes a definite sum of money, and is not prejudiced by having to pay that sum to the mortgagee and the insurance companies, instead of the mortgagee alone.

Under the same title subhead in 4 Am. Jur., § 66, p. 281, it is said that "By the great weight of authority, the assignment of part of a debt, although not assented to by the debtor, is enforceable against him in equity." Here, the right of the debtor to pay the debt *in solido* has not been denied.

We conclude, therefore, that the decree is correct in its entirety, and it is, therefore, affirmed.