GARMON v. THE HOME INSURANCE COMPANY OF NEW YORK.

4-5421                                                        126 S. W. 2d 621

Opinion delivered March 27, 1939.

A. L. Smith, for appellant.

Vol T. Lindsey and Verne McMillen, for appellee.

Baker, J. This suit originated in the chancery court when the Home Insurance Company of New York filed

an action to cancel a policy of insurance issued to appellant, covering property in the town of Gravette, Arkansas.

The defendant, Newt Garmon, answered plaintiff's complaint and filed a cross-complaint, alleging destruction of property by fire and asking for recovery of the amount of insurance. The insurance company filed an answer to the cross-complaint. Upon trial of the case the trial court dismissed both the complaint and cross-complaint and decreed that the cross-complainant, Garmon, take nothing by the suit and adjudged costs against each of the parties, that is to say, that each should pay costs that had accrued by reason of his own action in the suit. The plaintiff did not appeal from this decree of the court, but the defendant, Newt Garmon, has prayed an appeal.

It is insisted by appellant that since the complaint was dismissed the only question that remains in the case is the one arising out of the charge by the insurance company that Garmon, appellant, burned his own house. While we do not agree to this statement, it is perhaps not vitally essential that we discuss any other particular matter on this appeal.

As a defense to the cross-complaint it was pleaded, first, that the agent writing the insurance acted without authority; second, that the policy was fraudulently obtained; and, third, that the insured burned the property and, therefore, had no right to recover.

There is a serious question arising out of the manner in which this policy was issued as disclosed by evidence in relation to the authority of the agent of the insurance company, and this testimony is restated here, not solely for the purpose of determining the particular power or authority of the agent to issue the policy, but rather as a part of the facts and circumstances offered as proof tending to establish the fraudulent procurement of the policy and the wrongful destruction of the property.

The property was an old frame two-story building in the town of Gravette, somewhat removed from the center of active business. We are told that when it was first built it was intended for use as a private school. We do

not know, and it makes no particular difference, whether it was to be used as a school or dormitory, for that was so long ago that it was no longer recognized as a school building, but was, at the time of its destruction, known as the "Old Opera House." It seems to have gotten that name by reason of the fact that after it had ceased to be used for a school property it became a show-house or theatre building for the local community. Its usefulness in that respect, however, had long since ceased, and at the time of the fire a part of one of the large downstairs rooms had been cut off, or partitioned, one side of which was used as a station for the delivery of cream. The tenant payed five or six dollars a month rental therefor. In another small corner room there was a small barber shop in which two barber chairs had been placed. The tenant of this portion paid $5 per month for his rental. The upstairs portion was occupied only by the policyholder. He was unmarried, had some photographic paraphernalia and materials located therein. He had one or two heating stoves, a cook stove and some clothes there. A part of the ground floor had been fixed for use as a garage, but was no longer so occupied; however, appellant had stored therein an old Star car, which he says was of the approximate value of $25.

The evidence seems, or at least tends, to establish the fact that appellant was crippled so that he could not get about very well; that he was sometimes in poor health and although he claimed this property as his actual home or place of residence, he frequently went to the home of his sister at Decatur about nine miles away where he might have her nursing on account of his incapacity to wait upon and care for himself.

Mr. Garmon was at the home of his sister the night this property was burned. There is not much dispute about the fact that he left the property, which he claimed as his home, between five and six o'clock, when it was getting dark. A little later he was at Decatur. His sister, brother-in-law and one visitor testified that he had supper there. In fact, some of them testified that he was there at eight or nine o'clock when they retired and was there next morning. Whether he remained

there during the entire time after he first went to the house at about dark is not extremely important in this case and the evidence in that regard is in conflict. There are one or two witnesses who say that a few minutes prior to the time when the fire was discovered, his car was seen parked at this building where the fire occurred. This evidence is not at all unreasonable although it is contradictory of some witnesses who, at least, left the impression, if they did not say positively that he was at the home of his sister nine miles away.

Mr. Garmon was called as a witness by the insurance company. He was examined carefully, and later was recalled in his own behalf when he testified again. It may be said in regard to his testimony, both in his examination in chief and when he was cross-examined, that his testimony was very unsatisfactory, extremely evasive and very little of it was of any very great value in establishing any particular fact except his desire to recover the full amount of the insurance evidenced by the policy which called for twenty-eight hundred dollars ($2,800) on the building, and for one hundred dollars ($100) on personal property. He did not even want to produce his deed to the property, which he had obtained perhaps about two weeks before the fire. It appears that the deed was dated March 7th and was given him by a man who lived in Oklahoma, and who had formerly lived in Gravette and Mr. Garmon received it a day or two later. He had not placed it of record at the time he got the insurance policy which was issued by the agent of the insurance company at Decatur on the 23d day of March, 1936, about eight or nine o'clock a. m.

On the same day on which the policy was issued, at about nine o'clock that night the property was destroyed by fire. This was only a few minutes after Garmon's car had been seen at the building.

The evidence offered in regard to this agent's authority was to the effect that in the town of Decatur where he lived he had the right to countersign and deliver policies, but in the vicinity or surrounding country he had only the right to accept applications and forward them

to the company which would issue the policy if it approved the risk.

The evidence shows that insurance agents are furnished descriptive lists of property in the community in which they are authorized to act. It seems that these lists consist of serial numbers applicable to each piece of property and of other numbers by which insurance agents and others engaged in that business describe the property the subject of the insurance. In this case the agent who issued this particular policy had no such descriptive list or serial numbers of properties in Gravette where this property was located. He had seen the property, knew its location and appearance.

Evidence of insurance agents in Gravette, two of whom testified, is to the effect that Garmon had applied to each of them for insurance, but they did not accept his application or write insurance on this property, but one of them gave him the serial number and other descriptive numbers of this property and a statement as to the rate on the property and also the rate on the personal property located therein. Garmon denied that he applied to these men for insurance, but admits that he obtained from one of them these descriptive numbers and rates, which he took to the agent of the Home Insurance Company of New York at Decatur and procured from him the policy with these descriptive numbers written therein and upon the rates given him by the agent at Gravette.

While this case may be distinguished from a recent decision in regard to the authority of agents and acceptance of applications, (*Security Insurance Co.* v. *Van Norman,* 195 Ark. 200, 111 S. W. 2d 561) we think it unnecessary to discuss or settle that question in view of other conclusions upon which we have all agreed. There are some other facts in this case which should be stated and an effort will be made to give details of principal matters in controversy.

The testimony shows that Garmon admits that he was at the property between five and six o'clock in the afternoon; that he bought some kerosene and took it to his rooms in the building. He says it was for use

in his cook stove. According to his own statement, he left the building almost immediately after he delivered the kerosene there, and went to the home of his sister where he ate supper.

The town marshal, who said he had been watching the building, because he was afraid it would burn, is perhaps better able to explain what occurred at the time the fire started than any one else. He was going along a street of Gravette, going toward this building and not far away, when he observed a small flame at, or about the window sill. He said this flame seemed to go under the window sill and fill the entire room with a flash as of burning gasoline or kerosene. It is argued by appellant that after dark even the lighting of a match or candle would light up the entire room, but that is not the description of the occurrence as made by the marshal, nor is there any suggestion of the agency striking the match.

Although the fire burned slowly and took considerable time to break through and get to that part occupied by the cream station, the owner of that station says that portion of the building was so filled by some form of gas that it was impossible for him to enter and save his property. The owner of the barber shop was able to enter and remove practically all of his property. At the place where the barber shop was located there was no complaint of this gaseous condition.

The insurance company made an attempt to establish the fact that its agent had been drinking very heavily about two weeks prior to this fire and on account of his condition in this regard he was unable to enter into any form of valid contract whereby either he or the company might be bound. Two men who were sureties for the agent of the insurance company testified in regard to this fact. The appellant answers this testimony by stating, more in the nature of an argument than conclusion of fact, to the effect that he was present while the insurance agent wrote the policy of insurance for him upon a typewriter. He argues that inasmuch as the policy is in evidence and that the typewritten part, or portion thereof, is practically perfect, it is evidence within itself that the insurance agent was not at all incapacitated.

There are other facts which will be mentioned later. We are unable to say as a matter of law that when an insurance agent is able to write and deliver a policy of insurance he is capable of making a contract. Nor can we say as a matter of experience to what extent a man must be intoxicated to be unable to bind himself or his company, particularly under such circumstances as appear in this record.

Whatever may be the facts in this regard, it is undisputed that the appellant, Mr. Garmon, had bought this old dilapidated building outside the active business district of the town of Gravette, discarded as it was from any of the uses that had been made of it, such as a school or dormitory, or theatre building, or even garage. There is no doubt about the preponderance of the evidence in establishing the value of the building. It is fair to say that one witness for appellant testified that he is a contractor and he had made estimates of the value of the building material and labor for replacement of the building and fixed that sum in excess of five thousand dollars. Garmon himself finally admitted that five hundred dollars was the amount he was to pay for the house and lot altogether. He testified that he had at one time paid one hundred dollars, and another time two hundred dollars, and still owed two hundred dollars of the original contract price. He denied that he owed any part of this on this building for the reason, he said, the remainder, or last two hundred dollars was secured by a mortgage on a piece of farm property that he owned and upon which the house had been burned during his ownership, exactly two years prior to the fire that destroyed the building in controversy.

This extensive review is taken from more than 150 pages of appellant's abstract of evidence. The trial court made no special findings of facts. For that reason we have stated matters on all issues.

Appellant admits that the insurance on personal property did not cover his photographic materials, or the Star car which he says was in the building when it burned.

It must be said that the determination of the rights of the parties here rests upon the decision of questions of fact rather than upon propositions of law. We think the trial court might well have found there was fraud in the procuring of this policy upon property worth less than one fifth of the amount of insurance, or that the insurance contract was corruptly collusive. However, we hesitate to believe that condition prevailed. We also hold that if the defendant did not himself set fire to and destroy the house the circumstances in proof tend to establish, at least, a plan and design to profit greatly, more than five-fold, at the expense of the insurance company, whose premium had never been paid and was not tendered until some days after the fire. The fact that a policy had been issued was not reported to the insurance company prior to the report that the property had burned.

It is argued forcefully that the testimony of the witnesses who say that Garmon's car was parked at or near the building only a short time before the fire was discovered should not be believed. The witnesses who testified to that fact had no interest in this litigation. They testified positively and directly, like business men who had only a desire to tell the truth as compared to the statements, or answers of Garmon, who was pert, indirect, evasive, intentionly secretive and impolite, if not contemptous toward counsel.

Why may not the court have properly decided these issues against him? The trial court knew, as we do, that he need not necessarily have been personally present at the time the flash of fire indicated the building was marked for destruction. He had at stake more than five times the value of the property he had not paid for according to the record. It appears that he alone was interested in its destruction.

It is, also, argued that the so-called valued policy provision of our statutes, which prevents the insurance company from reducing loss claims on real property destroyed by fire, makes it improper for us to consider that matter here. Pope's Dig., § 7720. We do not think so. The question under consideration is not the amount of insur-

ance, but whether there was any insurance at all. If we should take appellant's view, the beneficent effects of the statutory valued policy provision of insurance policies on real property could be converted into a camouflage to conceal and protect fraud and crime.

This case, like others resting solely upon facts presented, must be determined according to the findings justified by the record. Recently we have had several similar controversies for decision. In these we reviewed the findings and decisions of the trial court and announced our holdings accordingly. Attention is called to the *Homestead Fire Insurance Company* v. *Russell*, 186 Ark. 1197, 53 S. W. 2d 584. In that case this court felt justified in going further than the trial court and held that the preponderance of evidence showed that Russell was responsible for the fire. So, also, in the case of *Rankin* v. *National Liberty Insurance Co.*, 188 Ark. 195, 65 S. W. 2d 17, this court affirmed the verdict of the jury which had determined the responsibility of the fire in that case. In a still more recent case of *Hill* v. *Mass. Fire & Marine Insurance Co.*, 195 Ark. 602, 113 S. W. 2d 104, this court affirmed the decision of the chancellor who held that a transfer of property to procure insurance was fraudulent and that the owner himself destroyed the property.

While the foregoing cited cases are not particularly referred to as precedents, they indicate the office of the court in the settlement and determination of the rights of the parties according to principles of justice rather than technical or assumed positions which apparently warrant unfair recoveries.

The plaintiff in lower court did not appeal. Appellant has shown no right of recovery. The decree of the chancellor is, therefore, affirmed.