**Ed GENTRY, Plaintiff,**

v.

**The HANOVER INSURANCE COM-PANY, Defendant.**

**Mrs. Bessie Justus, Intervenor.**

**Civ. A. No. 1091.**

United States District Court
W. D. Arkansas,
Hot Springs Division.
May 23, 1968.

Ben Harrison, Hot Springs, Ark., for plaintiff.

Wood, Chesnutt & Smith, Hot Springs, Ark., McMillen, Teague, Bramhall & Davis, Little Rock, Ark., for defendant.

Barber, Henry, Thurman, McCaskill & Amsler, Little Rock, Ark., for Mrs. Justus.

**628**

## OPINION

JOHN E. MILLER, Senior District Judge.

This is an action on an insurance policy whereby the plaintiff seeks to recover from The Hanover Insurance Company (hereinafter referred to as Hanover) for damages to a residence in Hot Springs, Arkansas, which occurred when the house burned on April 11, 1967.

The material allegations in the complaint are as follows: That on March 14, 1967, the defendant, through its agent, Kimball-Disheroon Agency, Inc., issued its policy of insurance, No. 1–FP–75–31–96, insuring plaintiff's dwelling and contents located at 610 Third Street, Hot Springs, Garland County, Arkansas; that the policy was issued in the amount of $10,000 for the house and $5,000 for the contents; that the premium was paid, that the house and contents burned and were totally destroyed on April 11, 1967; that despite plaintiff's demand the defendant has refused to pay the loss, and that $15,000 is now owing on the policy. The plaintiff prayed for recovery of the $15,000, plus 12 percent penalty and attorneys' fee.

In its answer the defendant admitted that the policy was issued, but denied that Gentry owned the dwelling covered. It admitted that the property was damaged by fire, but denied that it was a total loss and denied damage in the amount of $15,000.

The defendant also pleaded that the plaintiff was not the owner of the house and had no insurable interest therein; that the plaintiff failed to comply with the notification and proof of loss requirements contained in the policy; that the plaintiff either burned or caused the property to be burned; and that there was, at the time of the fire, $6,000 worth of other insurance in force covering the house which the plaintiff failed to reveal.

The defendant prayed that the complaint be dismissed and that it be awarded its costs.

The suit was originally brought in state court but was duly and timely removed by the defendant pursuant to 28 U.S.C.A. § 1441. The court has jurisdiction by virtue of diversity and the amount in controversy. The case was tried, by agreement of the parties, to the court without a jury on March 26, 1968.

## FINDINGS OF FACT

The property in question is located at 610 Third Street in Hot Springs, Arkansas. On October 22, 1957, the property was conveyed by Callie Fisher to her daughter, Mrs. Bessie Justus, with the grantor reserving a life estate in herself. Upon the death of her mother, Mrs. Justus became owner of the property in fee simple. On November 27, 1965, Mrs. Justus purchased a fire insurance policy on the property from the Westchester Fire Insurance Company through Gibbs Insurance Agency in Hot Springs. The policy provided $6,000 coverage. On March 6, 1967, Mrs. Justus entered into a written contract to sell the property to William Robert Irwin for a consideration of $7,000, $1,000 down with the balance, plus 6 percent interest thereon, to be paid in monthly installments of $60. On the same day Irwin executed a note for the balance payable to Mrs. Justus. The contract of sale from Mrs. Justus to Irwin was handled through Lakeland Realty Company of Hot Springs by Mr. W. D. Lloyd of that company. The negotiations took place in a pool hall in Hot Springs.

Irwin never lived on the property and did not obtain any insurance on it for himself. On March 16, 1967, after having placed in the house approximately $900 worth of second-hand furnishings, including various pieces of old furniture, old appliances, used silverware and even some old clothing, Irwin and Ed Gentry, the plaintiff, entered into negotiations for the sale of the property to Gentry.

The terms of the "sale" were as follows: The gross purchase price would be $16,000; Gentry would pay $1,000 down; Irwin was to go to Mrs. Justus in Blythe-

ville and tear up the contract of sale which Mrs. Justus had made to him and substitute a similar contract of sale between Mrs. Justus and Gentry for the same terms as were in the original contract of sale between Mrs. Justus and Irwin, which is to say a balance due of $6,000 at 6 percent payable at $60 a month to Mrs. Justus; the $1,000 which Gentry was to pay Irwin would offset Irwin's $1,000 cash payment to Mrs. Justus; Gentry was to be substituted for Irwin as the debtor or purchaser from Mrs. Justus, and a substitute contract was to be signed between Mrs. Justus and Gentry; after the substitution of contracts had been arranged between Mrs. Justus, Irwin and Gentry, then Irwin and Gentry were to go to a lawyer of their mutual choice in Hot Springs and have a written contract drawn up to express not only the foregoing substitution of Gentry for Irwin as a purchaser under a contract of sale with Mrs. Justus and the assumption by Gentry of the $60 monthly payments to Mrs. Justus, but also to encompass a note and lien between Irwin and Gentry for the difference between $7,000 and $15,000, the remaining $1,000 of the total consideration of $16,000 being accommodated by the $1,000 cash payment from Gentry to Irwin mentioned above.

Irwin went to Blythesville to call upon Mrs. Justus. He took with him two copies of the contract signed by Gentry. He tried to persuade Mrs. Justus to sign the new contract with Gentry and tear up the old contract with Irwin, thereby substituting Gentry for Irwin. Mrs. Justus stated that she would not agree to Gentry's assuming Irwin's obligation. She never has signed the contract, and no other instrument regarding the transfer to Gentry was ever written.

The agreement between Gentry and Irwin was for Gentry to pay $1,000 cash to Irwin, and to retire the balance with monthly payments of $60 each to Irwin and Mrs. Justus. Gentry testified that he borrowed the $1,000 from his brother-in-law, Virgil Nobles. Nobles did not testify. Gentry sent at least two $60

money orders to Mrs. Justus but she refused to cash them. She demanded that Irwin send his own personal check which he did. Gentry made two $60 payments to Irwin on April 10 and May 10.

Sometime prior to March 14, 1967, Irwin telephoned Kimball-Disheroon, the insurance agency, without identifying himself as Robert Irwin, and obtained a binder on the property. The agents were under the impression that the call was from Gentry and the binder was written. On March 14, 1967, Gentry went to the agency in person representing himself as the owner of the property. He purchased the policy and paid the premium. On March 24 a mortgage clause naming Mrs. Justus as mortgagee was endorsed to the policy.

On or about April 11, 1967, during the night there was a fire in the house, which fire was definitely of incendiary origin. As a result of the fire the building was more than 50 percent destroyed, and practically all of the personal property contained therein was either totally or partially destroyed by fire or smoke.

The plaintiff never submitted a proof of loss form, and when it became evident that the insurance company was suspicious of the fire, Gentry requested that Irwin relieve him of further payments until it was determined whether or not he had an "insurable interest." Irwin agreed and then sought the same consideration for himself from Mrs. Justus. She refused.

## DISCUSSION

The plaintiff contends that the house and contents were totally destroyed and that he is entitled to recover $10,000 for the building and $4,184 for the personal property contained therein. (The complaint alleged a value of $5,000 for the personalty, but the only testimony presented by the plaintiff, which was strongly contested, valued that property at $4,184.) The defendant denies liability and contends: that the plaintiff set fire to the building; that the loss was not as extensive as alleged by the plaintiff;

and that plaintiff concealed material facts in obtaining the policy.

The court is of the opinion that the defendant's first contention—that the plaintiff had no insurable interest in the property—is correct, and therefore the plaintiff may not recover under the policy.

A general definition of "insurable interest" is set forth in Appleman, Insurance Law and Practice, Vol. 4, § 2123, beginning at page 21, where the learned author states:

"The usual rule customarily followed is that an insurable interest exists when the insured derives pecuniary benefit or advantage by the preservation or continued existence of the property or will sustain pecuniary loss from its destruction. Reasonable expectation of benefit from preservation of the property is thus sufficient; or liability to loss from damage to it will be sufficient.

"A right of property is not an essential ingredient of insurable interest; any limited or qualified interest, whether legal or equitable, or any expectancy of advantage, is sufficient. It does not matter in what way such benefit arises or the reason loss would occur thereby, limited presumably by dictates of public policy—if such benefit would be lost by destruction of the subject matter, that interest is insurable.

"Thus, it may safely be said that a fee title is clearly not required of the insured, nor even a direct property interest, *the test of exposure to financial loss being all important.*" (Emphasis added.)

Arkansas has codified and narrowed somewhat the above definition by Ark. Stat.Ann. § 66-3205, which reads as follows:

"(1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured at the time of the effectuation of the insurance and at the time of the loss.

"(2) 'Insurable interest' as used in this section means any actual, lawful, and substantial economic interest in the safety of [or] preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment."

No case has been cited by the parties in their briefs nor has the court, by independent investigation, been able to find any case construing the above quoted statute. However, the statute, although somewhat inartfully drafted, makes it clear that the plaintiff is not entitled to recover.

▮▮▮ An insured must possess an economic interest in the safety of the property which interest must be "actual, lawful and substantial." This requirement the plaintiff did not meet because his economic interest in this property was neither actual, legal nor equitable, but was, rather, speculative and conjectural.

Irwin and Mrs. Justus had entered into a valid and enforceable written agreement, by virtue of which Irwin obtained an equitable interest in the property, which doubtlessly would meet the requirements of "insurable interest." It is this interest which the plaintiff contends was transferred from Irwin to him.

▮▮ All parties recognize that the statute of frauds requires that enforceable contracts for the sale of realty must be evidenced by some written instrument. See Ark.Stat.Ann. § 38-101, the pertinent part of which is as follows:

"No action shall be brought * * *

"Fourth, to charge any person upon any contract for the sale of lands, tenements, or hereditaments or any interest in or concerning them * * * unless the agreement, promise, or contract, upon which such action shall be brought, or some memorandum or note thereof, shall be made in writing, and

signed by the party to be charged therewith * * *."

See, also, Ark.Stat.Ann. § 38–105.

The plaintiff concedes the absence of any written agreement involving himself, but contends that he had an equitable interest in the property by virtue of his part performance of the contract which takes the transaction out of the statute of frauds. The part performance upon which plaintiff relies is the payment by him of $1,000 and later monthly installments to Irwin, together with the physical transfer of the keys of the house from Irwin to him. In other circumstances this might constitute "part performance," but as will be discussed shortly, the relation between Irwin and Gentry never reached the status of a "contractual agreement."

The statute (Ark.Stat.Ann. § 66–3205, supra) requires that an insurable interest must exist "at the time of the effectuation of the insurance *and* at the time of the loss." (Emphasis supplied.) When the policy was issued, March 14, 1967, Gentry had no interest in this property whatsoever. He had no written agreement and had made no payments. In fact, neither Gentry nor Irwin had done anything which would indicate that Gentry had obtained or would in the future obtain any interest in the property. Under no conceivable interpretation of the law could Gentry have enforced this "contract" against Irwin on March 14, 1967. Therefore, Gentry had no "insurable interest" at the time of the effectuation of the insurance.

Even if the court were to find, which it does not, that "part performance" occurred prior to the effectuation of the insurance, Gentry's claim must fail because he never acquired an interest sufficient to meet the requirements of the statute. No contract, either written or oral, was ever entered into between Gentry and Irwin or between Gentry and Mrs. Justus, as a reference to basic contract principles will readily indicate. These principles are set forth in 17 C.J.S. Contracts § 1, where the authors state:

"A contract is an *agreement* which creates an obligation. Its essentials are competent parties, subject matter, a legal consideration, *mutuality of agreement,* and mutuality of obligation." (Emphasis added.)

* * * * * *

"In the contract sense, 'agreement' is the expression of parties of a common intention to affect their legal relations."

The only agreement which ever existed among the three principals to this transaction—Mrs. Justus, Gentry and Irwin—was the agreement between Gentry and Irwin that Gentry should assume Irwin's obligation to Mrs. Justus. In other words, Gentry and Irwin contemplated a renegotiation of the entire transaction whereby Mrs. Justus would enter into a contract of sale with Gentry. Mrs. Justus' refusal prevented the formation of any contract involving Gentry.

In 17 C.J.S. Contracts § 43, p. 686, the authors state:

"Where an agreement is made subject to the consent of a third party, it must be looked on as a conditional agreement, dependent on such consent being given within a reasonable time, in default of which the agreement must be taken not to have become effective * * *."

The instant situation is not precisely that contemplated by the above quoted rule, but the legal principle expressed is clearly applicable. Strictly speaking, Mrs. Justus was not being called upon to approve the agreement between Gentry and Irwin. However, her "consent" was vital to the entire transaction because the "agreement" between Irwin and Gentry was for Gentry to enter into a new contract with Mrs. Justus.

Whether this transaction be characterized as an agreement between Irwin and Gentry, conditioned upon Mrs. Justus' approval, or as negotiation for a contract between Mrs. Justus and Gentry, it is clear that Mrs. Justus' failure to consent prevented Gentry from entering into a binding agreement with anyone.

In setting forth his contention that he had acquired an insurable interest, plaintiff in his brief states:

"There was no doubt about the terms of the oral agreement between plaintiff and Irwin. Under these facts either plaintiff or Irwin could have, and still may, enforced the agreement by an action in specific performance * * *. The fact that Mrs. Justus did not accept plaintiff as the purchaser in the place of Irwin is immaterial to plaintiff's agreement with Irwin, or the interest acquired. Even if Mrs. Justus accepted plaintiff as the purchaser at this time, the interest of plaintiff would not be enhanced or diminished."

In support of this contention the plaintiff cites Harper v. Albright (1958) 228 Ark. 760, 310 S.W.2d 475, which held that part performance can take an oral agreement for the sale of land out of the statute of frauds. This point is not disputed by the defendant, whose contention is that the "part performance" here is not sufficient. The facts upon which the Harper opinion was based are clearly distinguishable. At page 763 of 228 Ark., at page 476 of 310 S.W.2d, the court stated:

"It is admitted that appellee and Harper entered into the oral agreement, and that appellee gave Harper a check for $100 as part payment which was accepted and cashed. It is further admitted that the total purchase price was to be $3,000 and that the balance of $2,900 was to be paid later. The trial court found, and we think the evidence supports the findings that: Appellee was to secure a loan (on the land in question and other lands belonging to him) to pay the balance of the purchase price, and that this arrangement was made before appellant, Harper, tried to revoke the sale. At about the same time the agreement was entered into or shortly thereafter appellee entered into possession of the land by cutting timber thereon, by repairing fences, by placing cattle thereon to pasture, and by renting the 'cotton allotment' for the year 1956. Part

payment of the purchase price and the taking of possession by appellee took the oral agreement out of the statute of frauds."

In contending that his part performance was sufficient to take the contract out of the statute, the plaintiff erroneously assumes that a contract existed between Irwin and him. Absent a contract, part performance is inapplicable. See Hyder v. Newcomb (1963) 236 Ark. 231, 235, 365 S.W.2d 271; Rolfe v. Johnson (1950) 217 Ark. 14, 228 S.W.2d 482.

That Gentry and Irwin neved indicated theirs to be a binding agreement is further evidenced by the fact that when it became clear that the insurance company was suspicious of the fire, Gentry requested, and was granted, relief from further payments until it was determined whether or not he had, as he put it, "an insurable interest."

For the above stated reasons the court is of the opinion that at the time of the effectuation of the insurance the plaintiff had no interest in the property covered, and the court is further of the opinion that Gentry never acquired an interest in the property which could be described as an "actual, lawful, and substantial economic interest." There was no legally enforceable contract between Mrs. Justus and plaintiff, and the attempt made by Irwin to substitute Gentry as the purchaser from Mrs. Justus failed.

Therefore, the plaintiff never acquired an "insurable interest" in the property and cannot recover on this policy.

CLAIM OF MRS. BESSIE JUSTUS

This leaves for consideration the question whether Mrs. Justus has any interest in this litigation. In the consideration of this question, the court has kept in mind the dealings between Irwin and Mrs. Justus and the transactions between Irwin and the plaintiff, Gentry.

On October 10, 1967, Mrs. Justus filed her intervention, in which she alleged that she was without sufficient information to admit or deny the alleged clause

in defendant's policy of insurance pertaining to pro-rata liability of insurance companies; that at the time of the fire a policy of insurance had been issued to her by Westchester Fire Insurance Company in the sum of $6,000; that she entered into a written agreement for the sale of the property in question to W. R. Irwin on February 6, 1967, and that under the terms and conditions of said contract, Irwin agreed to keep the buildings insured against loss or damage by fire, etc., and to deliver the policies and certificates to her.

That prior to the date of the fire she received a certificate of Hanover Insurance Company, protecting her interest as mortgagee insofar as the unpaid balance of the purchase price was concerned, and therefore she is entitled to recover from defendant, Hanover Insurance Company, the unpaid balance of the purchase price in the sum of $6,000.

That the defendant has alleged in its answer to plaintiff's complaint that the plaintiff did not and does not have an insurable interest in the property, and that if it should be determined that the plaintiff does not have an insurable interest in the property, and the court should further determine that she, as intervenor, is not entitled to recover in full from the defendant Hanover the balance of the indebtedness due and owing her under the terms of her agreement with Irwin, that she is entitled to recover from Irwin the balance of the purchase price because of his failure to provide the insurance coverage protecting her interest as required in her contract of sale with Irwin, and that Irwin is therefore a necessary party to this proceeding.

On the same date, October 10, 1967, the intervenor filed her motion for leave to file herein her cause of action against Irwin as stated in her intervention. Upon receipt of the motion to permit Mrs. Justus to make Irwin a party defendant, the court entered an order denying the motion. On October 13 the defendant filed its response to the intervention of Mrs. Justus.

At the trial of the case there was introduced in evidence the original policy dated March 14, 1967, naming Gentry as the insured. On the first page of the policy the following statement appears: "Subject to the provisions of the mortgage clause attached hereto, loss, if any, on building items shall be payable to." The name of the alleged mortgagee was not inserted.

There was also introduced in evidence a purported copy of the Hanover policy which does have the name of Mrs. Justus inserted therein. The mortgage clause which Mrs. Justus referred to in her intervention was dated March 24, 1967, and had attached as a part thereof a copy of the contract between Mrs. Justus and W. R. Irwin dated February 6, 1967, and accepted by Mrs. Justus on February 7, 1967.

From a consideration of the entire record relative thereto the court is of the opinion that since Irwin had not complied with the requirement in the contract with Mrs. Justus to furnish her property insurance, and since he had applied to the agents of Hanover for a binder, and the policy was subsequently issued to Gentry, Irwin evidently conceived the idea of having attached to the policy a mortgage clause to cover his failure to furnish insurance in accordance with his contract with Mrs. Justus.

The court is aware that under a standard mortgage clause, most of the decisions hold that the agreement of the company with the mortgagee is separate and divisible from that with the mortgagor, and that the mortgagee cannot be affected by any act or default of the mortgagor and any breach of the policy terms and conditions committed by the mortgagor is no defense to an action by the mortgagee. It must be remembered that Mrs. Justus had in force at the time of the fire her individual policy issued to her by Westchester Fire Insurance Company in the sum of $6,000.

Gentry was not the debtor of Mrs. Justus. He was not a mortgagor, and since there was no creditor-debtor relation between Mrs. Justus and Gentry,

**634**

the court is of the opinion that such interest could not be created by the insertion of a standard or union mortgage clause in a policy of insurance, even though Gentry was the named insured. Especially is this true in this case since, as heretofore stated, the court is convinced that Irwin was the moving cause in procuring the issuance of the mortgage clause in an effort to escape his contractual duty to provide fire insurance as a protection of Mrs. Justus' ownership in the property.

The defendant company should not be held responsible to Mrs. Justus or to Irwin or anyone else by reason of the mortgage clause obtained by Irwin and forwarded to Mrs. Justus.

In view of all the facts as disclosed by this record, the court is of the opinion that the so-called mortgage clause is a nullity, and that Mrs. Justus had no interest whatsover in the policy upon which the instant suit is based.

Therefore a judgment is being entered today dismissing the complaint of plaintiff and the intervention of Mrs. Justus, and awarding a refund to Gentry by the defendant for the sum of $79 as premium paid by Gentry. Each party shall pay its own costs.