Julius T. WILLIAMS and I. Oleta Williams, Husband and Wife, Plaintiffs,

v.

FARMERS AND MERCHANTS INSURANCE COMPANY, Marie Adickes, and John J. Carter, Defendants.

No. F–70–C–13.

United States District Court,
W. D. Arkansas,
Fayetteville Division.

June 8, 1971.

See also D.C., 51 F.R.D. 211.

Sam Sexton, Jr., Fort Smith, Ark., for plaintiffs.

Daily, West, Core & Coffman, Fort Smith, Ark., for Farmers and Merchants Insurance Co.

Ralph Robinson, Van Buren, Ark., for John J. Carter.

## OPINION

JOHN E. MILLER, Senior District Judge.

On June 19, 1970, the plaintiffs filed their complaint against the defendants, in which they alleged that the Farmers and Merchants Insurance Company issued its policy No. FH–1–30–24–46 for a period of three years effective April 22, 1968, insuring plaintiffs against loss by fire of a dwelling in the sum of $50,000 and appurtenant private structures in the sum of $5,000, unscheduled personal property, $20,000, and additional living expenses, $10,000. That on or about 1:00 a. m., December 9, 1969, the dwelling was totally destroyed by fire; that the insurance company was immediately notified, and in due time proof of loss was submitted. That defendant insurance company has arbitrarily and capriciously failed, refused, and neglected to cooperate in any way, and has further vowed that it will never pay the plaintiffs pursuant to the terms of the policy unless and until ordered to do so by a court of competent jurisdiction.

That the defendant Marie Adickes was the first mortgagee named in the policy; that defendant John J. Carter was named as an insured pursuant to an endorsement issued on November 3, 1969; and that plaintiffs entered into a contract on October 27, 1969, for the sale of the property (Exhibit D to the complaint), but that defendant Carter has subsequent to the fire loss defaulted, and plaintiffs have retaken possession of the insured property in accordance with the terms of the contract.

The plaintiffs further alleged in paragraph 14 that the defendant insurance company has maliciously, arbitrarily, and capriciously failed, refused and neglected to settle said fire loss; and has caused an extensive inquiry and investigation into plaintiffs' past backgrounds and activities, and as a result of such investigations, all of which were unrelated to the fire loss covered by the policy, they have suffered humiliation, embarrass-

ment, and great emotional distress, all to their damage in the sum of $1,000,000.

The plaintiffs prayed for judgment against the insurance company in the sum of $55,000, their costs, statutory penalty, interest, and attorney's fees; that the rights of defendant Adickes and defendant Carter be adjudicated, and that the plaintiffs recover judgment against the insurance company in the sum of $1,000,000.

On July 21, 1970, Carter filed an answer to the complaint of plaintiffs denying all allegations of the complaint except the allegations of identity and citizenship of the various parties.

As a part of the answer, Carter included a cross-claim against the insurance company in which he alleged that he was a citizen of the State of Missouri and a resident of the City of Springfield; that Henry Insurance Agency is the authorized agent of the insurance company, and should be made a third-party defendant herein.

That on October 27, 1969, he entered into a contract with plaintiffs as referred to by plaintiffs in their complaint; that cross-defendant Henry Insurance Agency was the real estate Broker in the transaction, and as a part of such purchase cross-claimant agreed to keep the property insured in good companies acceptable to plaintiffs, designated as "parties of the first part" in said contract; that Argil Henry, of the Henry Insurance Agency, persuaded cross-claimant Carter to retain the policy hereinbefore mentioned, and upon the advice of both plaintiffs and the said Henry, the cross-claimant had the policy transferred to him.

That he has given timely notice of his claim and submitted proof of loss; that the insurance company and the Henry Insurance Agency have arbitrarily and capriciously failed, refused, and neglected to cooperate in any way with him and have thus failed and refused to pay the cross-claimant the sum owed him under the policy.

In paragraph 9 of his cross-claim, Carter alleged:

"That as a result of the failure of cross-defendants to pay his valid claim, cross-claimant was unable to complete his contract with plaintiffs for the purchase of this property and lost the $20,000.00 which he had paid to them as a down payment."

and that said cross-defendants should reimburse him for the said sum of $20,000. Carter additionally alleged that he has been damaged in the sum of $100,000 by his embarrassment, humiliation, inconvenience and great emotional distress suffered because of the willful, malicious, arbitrary and capricious action of the insurance company in failing and refusing to pay his claim under the policy.

He prayed for judgment against the insurance company and the Henry Insurance Agency in the total sum of $205,000.00.

At the beginning of the trial, the court, by order, realigned Carter as a party plaintiff since the claims that he asserted were based upon his contentions that he became and continued to be the named insured.

On July 29, 1970, the defendant insurance company filed its answer to the complaint of plaintiffs, hereinafter referred to as Williams, in which it denied all the allegations in the complaint except it admitted that it had caused a sworn statement to be taken from the plaintiffs, and that it has made no tender of payment to the plaintiffs under the policy for their alleged loss. The insurance company further alleged:

"15. That any insurance policy on the property described in plaintiffs' complaint was procured by the plaintiffs through the use of fraud and misrepresentation in failing to disclose prior fires and prior insurance claims.

"16. That plaintiffs, Julius T. Williams and I. Oleta Williams, fraudulently prosecute this claim against the defendant.

"17. That any and all investigations of the claims and activities of

the plaintiffs undertaken by the defendant were privileged.

"18. The defendant further states that the plaintiffs did not have an insurable interest in the property."

In its answer to the cross-claim of Carter, the insurance company denied all the allegations contained in the cross-claim except that it had refused to pay any money to cross-claimant. The insurance company further realleged the same defenses as alleged in its answer to the complaint of the plaintiffs.

Counterclaim was also filed by the insurance company against the plaintiffs Williams and cross-claimant Carter seeking judgment against said parties for the sum of $100,000 as punitive damages because of the acts and conduct of said parties. The insurance company further alleged that Marie Adickes, as first mortgagee is asserting a claim against it for the amount due on the mortgage, and ·that if it is required to pay such sum that it have judgment over against the plaintiffs and cross-claimant.

On August 3, 1970, the Henry Insurance Agency filed its answer to the cross-claim of Carter, and also included a counterclaim against Carter for $50,-000 for actual and punitive damages because of the conduct of the said Carter.

On December 2, 1970, the court, upon motion of plaintiffs Williams, granted leave to file an amended complaint, in which they incorporated by reference all allegations in the original complaint except paragraph No. 14. In the amended complaint, Williams alleged that the insurance company had admitted the issuance and delivery of the policy of insurance sued upon, and that the insured property was totally destroyed by fire. They therefore prayed for judgment against the insurance company in the "amount of $50,000, plus the 12 percent penalty provided by law, plus a reasonable attorney's fee; that the court determine the amount of such recovery which should be due and payable to Marie Adickes and order payment to Marie Adickes in such sum * * *."

On the same day the amended complaint was filed, the court, upon motion of the insurance company and the Henry Insurance Agency, granted leave to file an amendment to their answers and counterclaims, which merely added to their prior answers, answers to cross-claims and counterclaims, as follows:

"a. The policy sued upon by the plaintiffs and John J. Carter provides 'This entire policy shall be void, if whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.' These parties state that at the time the policy was issued, the plaintiffs failed to reveal the prior fire losses, insurance claims and insurance cancellations sustained by them; that at the time the policy was transferred to John J. Carter, the plaintiffs and John J. Carter concealed the true nature of the transaction and misrepresented material facts concerning said transaction and the alleged interest of John J. Carter in the property.

"b. The policy sued upon provides that Farmers and Merchants Insurance Company shall not be liable for loss occurring 'while the hazard is increased by any means within the control or knowledge of the insured.' Farmers and Merchants Insurance Company and Henry Insurance Agency state that the plaintiffs and John J. Carter increased the hazard by means within their control and knowledge."

On January 22, 1971, Williams filed their answer to the counterclaim of the insurance company, in which they denied each and every material allegation contained in the counterclaim.

On May 25, 1970, the mortgagee, Marie Adickes, obtained a judgment and degree against Williams in the Chancery Court of Crawford County, Arkansas, foreclosing the mortgage that had

been executed by Williams to secure the payment of the balance of the purchase price of $24,999.00. On February 24, 1971, the court entered judgment against the insurance company for the amount of the judgment rendered by the Crawford County Chancery Court, which judgment was paid on March 10, 1971.

On March 17, 1971, Williams filed a motion for a reconsideration of the judgment of this court on February 24, 1971, the consideration of which was deferred until the determination of the instant case on its merits.

The case proceeded to trial before the court on April 12, 13, 15 and 16, 1971.

Jurisdiction is based upon diversity of citizenship and the amount involved. 28 U.S.C. § 1332. The substantive law of Arkansas applies.

The plaintiffs, Julius T. Williams and I. Oleta Williams, contend that the defendant Farmers and Merchants Insurance Company issued and delivered insurance policy No. FH–1–30–24–46 in the face amount of $50,000 on the property involved in this action, and that said property burned about 1:00 a. m. on December 9, 1969, with said policy in full force and effect at the time.

In response to requests of plaintiffs for admissions of fact, the defendant admitted (1) the issuance of the policy; (2) the issuance of the endorsement on November 3, 1969, changing the name of the insured to John J. Carter; (3) the premiums were paid; and (4) that the insured residence was totally destroyed by fire. However, the defendant in its response denied that the policy was in force and effect at the time the residence was destroyed by fire.

Carter was in possession of the property when it was destroyed. He contends that he is entitled to recovery in the amount of $20,000 for unscheduled personal property and $10,000 additional living expenses incurred because of the fire loss. He further contends that his interest in the property was acquired through diverse transactions involving himself and the plaintiff Williams, and

reiterates the contentions of the plaintiffs that said insurance policy was issued and in effect at the time of the fire.

In the résumé of the pleadings, the court set forth the affirmative defenses alleged by the insurance company and, based upon said allegations, the defendant insurance company now contends (1) that the policy was procured by Williams through the use of fraud and misrepresentations in the failure to disclose prior fires and prior claims; (2) that at the time the policy was transferred to Carter, that Williams and Carter concealed the true nature of the transaction and misrepresented material facts and the interest of Carter in the property; and (3) that the said Williams and Carter, by their actions and by means within their control and knowledge, increased the hazard to the property.

The facts as found by the court and discussion of the applicable law follow.

On November 22, 1967, a sales contract was entered into between Marie Adickes, seller, and Williams, buyer, by the terms of which Williams agreed to purchase the 16 acres of land upon which the residence which burned was located for the purchase price of $25,000, one dollar of which was paid in cash, and the balance of $24,999 evidenced by a promissory note secured by mortgage to become due and payable on or before December 1, 1968, with interest at the rate of 5 percent per annum, beginning December 15, 1967. Williams occupied the residence on or about December 1, 1967, and soon thereafter acquired a policy of insurance by another company in the sum of $50,000 which was superseded by the policy in suit.

On January 17, 1969, Mrs. Adickes filed a suit in the Crawford County Chancery Court for judgment against Williams for the principal sum of $24,999, plus interest, and costs and for foreclosure of the mortgage lien.

The policy sued upon contains the following:

"*Concealment, fraud.* This entire policy shall be void, whether before or

after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

\* \* \* \* \* \*

*"Conditions suspending or restricting insurance.* Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring

> "(a) while the hazard is increased by any means within the control or knowledge of the insured;"

On the first page of the policy the following appears:

*"Section II Only:* (a) The described premises are the only premises where the Named Insured or spouse maintains a residence other than business property and farms; \* \* \*"

On about February 1, 1969, Williams moved from the property covered by the policy and established their residence in Pea Ridge, Arkansas, and were living at Pea Ridge at the time the insured property burned.

On October 27, 1969, Williams, designated as Party of the First Part, and Carter, a single man, designated as Party of the Second Part, entered into the "Contract to Sell Real Estate," mentioned in the complaint. The contract provides that the Party of the First Part has bargained to sell to the Party of the Second Part the property covered by the insurance policy:

"for the price and sum of Seventy Five Thousand & No/100 ($75,000) Dollars, of which the said party of the second part has paid Twenty Thousand ($20,000) consisting of two houses & lots in Springfield, Mo. 1630 & 1636 West Lombard St., in property \* \* Balance of Fifty Five Thousand ($55,-000) to be paid at the office of Argil Henry Insurance Agency & Real Estate, 5113 So. 31st St., Ft. Smith, Ark. within 120 days (2–27–70) Dollars, bearing interest at the rate of 6 per-

cent per annum from the date until paid, and payable as follows: Fifty Five Thousand and No/100 Dollars, payable in one lump sum \* \* \*, with _____ per cent interest per annum from date until paid.

"Homeowner's insurance to be transferred to Mr. John J. Carter in the amount of $50,000."

\* \* \* \* \* \*

"But if the purchase money for said lands is not paid at the time and in the manner herein specified, upon the _____ default made in said payments, all of said notes remaining unpaid shall at once become due and payable, and the obligation resting on the party of the first part shall become null and void, and the money theretofore paid on account of said purchase shall remain with and be the property of the party of the first part and shall be considered as so much rent paid by said party of the second part for the use of said property from the date of this instrument to the date of such default in payment.

"Said second party also agrees to keep said property insured and pay for same, for the sum of Fifty Thousand and no/100 ($50,000) Dollars, in good companies acceptable to said first party, and said insurance shall have loss clause payable to said first party.

"And the said party of the second part hereby accepts the conditions of this obligation and in the event of the failure to make payments as herein provided, waives all right and claim to the said Real Estate, and to the money theretofore paid on account thereof."

The contract was discussed and prepared in the office of the Henry Insurance Agency in Fort Smith, Arkansas. The signatures of the parties were witnessed by Maxine Henry, Notary Public.

During the discussions which terminated in the preparation and execution of the contract, Williams and Carter, as an inducement to the agent of the insurance company to execute the endorsement, represented that Carter was the

owner of the two houses and lots in Springfield, Missouri, with which he was making the down payment of $20,000 to Williams. Williams, as an inducement to the agent of the insurance company to execute the endorsement, represented that he had cash in escrow sufficient to pay the indebtedness due Mrs. Adickes and that the same would be paid by him. The $55,000 deferred payment was to be received in the office of the Henry Insurance Agency within 120 days, and Williams and Carter falsely represented that Carter would receive a settlement of a personal injury claim in a sum sufficient to pay Williams the $55,000 from a liability insurer within that period of time. Mr. Henry, the owner and manager of the insurance agency, relied upon those representations, and agreed to execute a "Change and Attaching Clause Endorsement" to the policy which he made effective November 3, 1969. By such endorsement the policy was amended as follows:

"It is hereby understood and agreed that the named insured is amended to:
John J. Carter,
in lieu of Julius T. Williams and I. Oleta Williams.

"It is further understood and agreed that the Mortgagee is changed to Julius T. Williams and I. Oleta Williams, in lieu of Marie Adickes, 1370 Boylers Road, Los Angeles, Calif.

"No other changes."

In the résumé of the allegations of the complaint, the court referred to the contract of October 27, 1969, between Williams and Carter. In the complaint Williams alleged:

"That the plaintiffs herein entered into a contract, a copy of which is annexed hereto and made a part hereof as though set forth herein word for word, as Exhibit D, that said defendant Carter has, subsequent to the aforementioned fire loss, defaulted and the plaintiffs herein have retaken possession of the described lands pursuant to the terms of said Exhibit D; however, the defendant Carter may

have some benefits due him pursuant to the terms of said insurance policy; defendant Carter resides in Springfield, Missouri."

It will be remembered that Carter in his cross-claim against the insurance company asserted a claim for $20,000 because of its failure to pay his claim made under the insurance policy, and also that he was damaged in an additional sum of $100,000 by the action of the insurance company in refusing to pay him as the named insured.

No evidence was introduced showing or even tending to show when Williams decided to cancel the contract of October 27, 1969, for failure of Carter to pay him the remainder, $55,000, of the purchase price.

On November 6, 1969, nine days after the contract was executed with Carter, Williams offered to pay Mrs. Adickes the amount of the mortgage indebtedness provided she would grant a setoff of $3,468, and alternatively offered to reconvey the property to Mrs. Adickes in consideration of the cancellation of the mortgage and debt and payment to him of $3,468.

It will be noted that this action on the part of Williams occurred three days after the effective date of the alleged endorsement which substituted "Julius T. Williams and I. Oleta Williams, in lieu of Marie Adickes" as mortgagee, and John J. Carter as insured.

On December 5, 1969, the insurance company mailed a notice of cancellation effective ten days from the date of the notice to Carter at Mountainburg, Arkansas, and to Williams at Conway, Arkansas. Carter and Williams each denied receipt of the notice, but the court is convinced that Carter received the notice and advised Williams of its receipt.

The fire occurred as heretofore stated about 1:00 a. m. on December 9, 1969, approximately three days after the notices of cancellation were mailed.

■ There was considerable testimony and evidence before the court relative to the past activities and other in-

surance claims of Williams. Though this evidence is material and relevant in the consideration of the circumstances surrounding the transaction between Carter and Williams and their subsequent claims under the policy, it is not sufficient to support the defendant's contention that Williams initially procured the insurance policy through the use of fraud and misrepresentation in failing to disclose prior fires and prior claims. Evidence which may tend to show a general plan or motive is admissible only as evidence of fraudulent intent and not that the misrepresentation was made. Fulwider v. Woods (1971) 249 Ark. 776, 461 S.W.2d 581. In the case of Farmers Union Mutual Ins. Co. v. Denniston (1964) 237 Ark. 768, 376 S.W.2d 252, the insured failed to fill out certain blanks on an application for insurance, and the Arkansas Supreme Court held that failure of the insurance company to object to insured's failure to give information resulted in a waiver by the insurance company of any right it might have against the insured for misrepresentation of these matters in the policy application. In the case before the court, Williams provided all of the information that the agent of the insurer requested. There was no written application and the agent asked no questions about prior fires or prior insurance claims. Williams was not required to volunteer such information. There was no misrepresentation by Williams when he initially applied for the insurance policy sufficient to void the policy.

 Carter had been placed in possession of the property by Williams at the time of the fire, but in the opinion of the court he acquired no insurable interest in the property. "An insured must possess an economic interest in the safety of the property which interest must be 'actual, lawful and substantial.'" Gentry v. Hanover Ins. Co., (W.D.Ark.1968) 284 F.Supp. 626, 630. Carter had allegedly traded two houses in Springfield, Missouri, as down payment on this property, and the purported value of the houses was $20,000. This left a balance of $55,000 due Williams on the sales

contract, and by the terms of the contract it was to be paid in 120 days. According to the recorded instruments of title, Williams owned the Springfield property. There was an attempt to explain title being in Williams' name, but the testimony was so inconsistent that the court cannot give it any weight. Carter was an unemployed taxicab driver who had not filed an income tax return for two years previous to the fire. There was no testimony offered as to the source from which he would receive $55,000 to make the required payment on the house except that he claimed to have been injured in an automobile accident and said he was expecting a settlement. There has not been a settlement on this accident at this time, and no lawsuit has been filed. Carter did not own the two Springfield houses. Therefore, he did not possess an economic interest in the safety of the property and was not capable of making the $55,000 payment as required by the contract of sale at any time. The possibility of his receiving a settlement based on his accident claim would be at best subject to considerable speculation.

 Williams had moved to Pea Ridge on or about the 1st of February of 1969 and had taken up residence in a home in that area. On the face of Farmers and Merchants Insurance policy No. FH–1–30–24–46 the following appears:

"Section II only:

"(a) The described premises are the only premises where the named insured or spouse maintains a residence other than business property and farms * * *."

The testimony by the parties reflecting how the transaction between Carter and Williams arose is inconsistent and ambiguous. It is not possible for the court to tell from the parties' testimony exactly how Carter and Williams had worked out the transaction. However, the court can draw an inference that Williams knew he could not maintain two homeowners insurance policies. Also, Williams had a foreclosure suit filed against him by Mrs. Adickes on the property in question. The

only way that Williams could keep the broad homeowners coverage was "to sell" the property. A transfer of property to procure or maintain insurance may be fraudulent. Garmon v. Home Insurance Co. of New York, (1939) 197 Ark. 1102, 126 S.W.2d 621; Hill v. Massachusetts Fire & Marine Ins. Co., (1938) 195 Ark. 602, 113 S.W.2d 104. The misrepresentations to the effect that Carter owned the Springfield houses which were traded on the Mountainburg property and that Carter was capable of paying $55,000 in 120 days after the sale contract were material. The agent of the defendant relied on these misrepresentations and issued the heretofore mentioned endorsement which named Carter as the insured and Williams as the mortgagee. As previously stated, the policy language provides that the entire policy will be void if the insured misrepresents a material fact concerning the interest of the insured in the insured property.

Williams, in allowing Carter to take possession of the property when Carter had no insurable interest, increased the hazard of the risk for which the insurance company had undertaken to provide coverage.

> "The term 'increase of hazard,' however, refers to an increase of either the physical or moral hazard. And 'moral hazard' has been defined as the risk, danger, or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance, and any change in the insured or the insured property that will increase the probability of such a destruction increases the moral hazard; as, for example, any act or change *that increases the temptation to destroy,* or any act that reduces the value of the property in proportion to the amount of insurance, or the procuring of insurance materially in excess of the reasonable cash value of the property. As a general rule, an increase of risk or hazard also infers something of duration, as distinguished from a casual change of a temporary character. In the same section

it is also said that the increase of risk or hazard is a question for the jury, unless the evidence is so conclusive that reasonable minds cannot differ." (Emphasis supplied.)

Orient Insurance Company v. Cox, (1951) 218 Ark. 804, 238 S.W.2d 757.

In allowing Carter to be listed as the named insured and the party in possession of the Mountainburg property, the risk was substantially greater than if a person with an actual economic interest in the safety of the property had been the named insured and resided there. Carter could suffer no loss if something happened to the property, but would be in a position to claim, as he has in this lawsuit, substantial insurance benefits for which he has suffered no loss. Williams had no choice except to get the property into someone else's name in order to maintain insurance coverage. It is important to note at this point that notices of cancellation were mailed by the insurance company on December 5 after the company discovered Carter was the named insured. The material misrepresentations which were made by Williams and Carter to the agent of the insurer resulted in Carter's having possession and being the named insured of the property in which he had no insurable interest. This is an increase of hazard in both the physical and moral sense. The policy provision on "Increase of Hazard" has been previously set out, and it provides for suspension of the coverage afforded under the policy if "the hazard is increased by any means within the control and knowledge of the insured."

Though the entire policy is void by reason of the material misrepresentations and the resulting increase of hazard, some discussion of the nature of the claims before the court provides a more thorough understanding of the peculiar circumstances involved in this case. Carter's claim for $20,000 unscheduled personal property in the house and $10,000 additional living expenses incurred by reason of the fire is illustrative. Only the testimony of Carter reflects that any items of furniture of any value were in

the house at the time it burned. There is some conflicting testimony by Williams and his wife to the effect that Carter bought some furniture from them. They did not testify that Carter had the furniture in the Mountainburg home at the time it burned. Carter's testimony was equivocal and generally not worthy of belief, and the court cannot allow any claim based only on his testimony. In addition to claiming certain furniture was in the residence, Carter submitted a list to the court (Plf. Carter's Ex. 6) which allegedly represents wearing apparel owned by Carter which was in the house at the time of the fire. That an unemployed taxicab driver would have such a wardrobe is incredible. The list in part includes such items as:

| | |
|---|---|
| "1 suit mid-blue | $155.00 |
| 1 suit dark blue | 155.00 |
| 1 pin stripe grey | 155.00 |
| 1 suit English Tweed | 200.00 |
| 1 suit dark blue | 125.00 |
| 1 suit light grey | 69.00 |
| 1 suit Mid-night | 69.00 |
| 1 suit Mid-brown | 105.00 |
| 1 sport coat | 125.00 |
| 1 Tux black | 150.00 |
| 60 more or less pair pants | 20.00 per |
| 60 sport shirts & trousers | 20.00 each |
| 100 pairs of sock $1.75 & $2.25 | |
| 50 ties each $5.00 to $7.00 | |
| One set of luggage (light genuine leather) | |
| one two-suiter, one pullman, one attache case, | |
| one brief case | $250.00" |

The list totals $7,638.73 and was prepared the night before the trial. The insurance company had previously requested such a list from Carter on several occasions, and Carter had failed to comply. In light of these circumstances, the court considers the entire claim for personal property by Carter to be based on conjecture and obscure evidence, and Carter is entitled to recover nothing.

The claim for additional living expenses is equally unbelievable. One month before the fire Carter was living with his mother in one of the two Springfield houses which were traded in on the Mountainburg residence. (It is interesting to note that Carter's mother paid $60 per month rent to Williams throughout this time.) Mrs. Carter testified that her son was welcome to return to her house to live at any time he wished. However, Carter preferred to stay in various motels, and allegedly paid rent up to $480 per month from the time of the fire until the time of the trial.

Carter's cross-claim was based on the failure of the defendant insurer to pay "his valid claim." The decision of the court is that the insurance company had every right to refuse to pay and has no duty to pay the claim of Carter. Therefore, he cannot recover damages for refusal to pay.

The evidence does not expressly reveal the intentions of Williams and Carter when they decided to procure an assignment of the policy to Carter and to designate Williams as mortgagee in lieu of Mrs. Adickes, but from a consideration of the credible evidence, the court is convinced that Williams realized that if he were to protect his equity of $1.00 which he had paid on the purchase price when he purchased the property from Mrs. Adickes, that something had to be done, and he and Carter decided that the only chance for Williams to make a profit was for him "to sell" the property and substitute himself as mortgagee rather than Mrs. Adickes. In view of the facts, the court is convinced that Williams and Carter wilfully concealed and misrepresented material facts concerning the insurance, and thus persuaded Henry, the insurance agent, to make the transfer. It is undisputed that had Carter and Williams revealed the true nature of the transaction or their intentions, the transfer would never have been executed. The court is also convinced that the false representations made by Carter and Williams and their actions in line with the misrepresentations increased the hazard covered by the policy and voided the policy.

Therefore, the original and amended complaint of the plaintiffs Williams should be dismissed; and the cross-claim of Carter against the defendant insurance company should be dismissed.

The counterclaim of the defendant Farmers and Merchants Insurance Company for punitive damages and actual

damages except as herein stated should be denied.

The claim of the defendant insurance company for judgment against the plaintiffs Williams in the sum of $31,248.85, the amount paid to Mrs. Adickes on her mortgage, should be deferred without prejudice to the action of the insurance company for foreclosure as assignee of the mortgage.

The motion of plaintiffs Williams filed March 17, 1971, to amend the order of February 24, 1971, should be dismissed; and the cross-claim of the defendant Henry Insurance Agency for $10,000 actual damages and $50,000 punitive damages should be denied.

The defendants Farmers and Merchants Insurance Company and Henry Insurance Agency should recover of and from plaintiffs Julius T. Williams and I. Oleta Williams and John J. Carter all taxable costs.

Judgment in accordance with the above is being entered today.