## KISSIRE *v.* PLUNKETT-JARRELL GROCER COMPANY.

## Opinion delivered March 18, 1912.

1. BILLS AND NOTES—INDORSEMENT—LIABILITY AS SURETY.—One who indorses a note, either at the time of its execution and delivery to the plaintiff or prior to any transfer thereof and before it has been put in circulation, is a surety, although he indorsed it upon the back, instead of upon the face, of the note.   (Page 477.)

2. PRINCIPAL AND SURETY—NECESSITY OF CONSIDERATION.—A promise made by a surety must be supported by a consideration; and if the debt of the principal was incurred previous to the undertaking of the surety, there must be a new consideration to sustain the surety's promise.   (Page 477.) .

3. SAME—SUFFICIENCY OF CONSIDERATION.—The consideration of the promise of a surety need not be an advantage received by the surety himself if it is founded upon the consideration then received by the principal debtor, or if by such promise a disadvantage resulted to the creditor.   (Page 478.)

4. SAME—SUFFICIENCY OF CONSIDERATION.—Where it was agreed between a creditor and the maker of a note at the time the consideration passed to him that the note should be secured by the indorsement of a certain surety before it would be accepted by the creditor, and the note was held by the creditor's agent for some time before it was signed by such surety, the indorsement was the same in effect as if it had been indorsed when it was executed by the maker, and the consideration flowing to the maker was sufficient to support the promise of the indorser.   (Page 478.)

5. SAME—CONSIDERATION—EXTENSION OF TIME.—An agreement of a creditor to extend the time of an indebtedness was a sufficient consideration to support the undertaking of a surety.   (Page 478.)

6. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— A finding of a chancellor which is not clearly against the weight of evidence will not be disturbed.   (Page 478.)

7. SUBROGATION—SECURITY HELD BY CREDITOR.—A surety upon notes secured by a mortgage, upon payment of the notes, is subrogated to the rights of such creditor in the security so held, but such right can not be enforced so as to interfere with the mortgagee's rights.   (Page 479.)

8. PRINCIPAL AND SURETY—COMPELLING RECOURSE TO OTHER SECURITY.—Where a mortgage was given as security for five notes, on the first three of which an indorser was surety, and upon sale of the mortgaged property the proceeds were not sufficient to pay the unindorsed notes covered by the mortgage, the surety was not entitled to have any of the proceeds of the mortgage credited on the indorsed notes.   (Page 479.)

9. INSURANCE—APPLICATION TO SECURED DEBTS.—Where the parties
to a mortgage provide that any insurance on the property shall
be payable to the mortgagee, the proceeds thereof are in effect ap-
propriated to payment of the mortgage debt, and can not be applied
to any other debt without the consent of all parties. (Page 481.)

10. PRINCIPAL AND SURETY—DISCHARGE OF SURETY.—A surety upon a
note secured by mortgage is not discharged by an order of the court
postponing the sale of the property for sixty days. (Page 482.)

11. SAME—EFFECT OF FAILURE TO OBTAIN INSURANCE.—Where a mort-
gage provided that the mortgagor should provide and maintain in-
surance upon the property, and that the mortgagee also might take
out insurance thereon, the latter was not obligated to so do, and
was not liable to the surety of the mortgagor for failure to take out
additional insurance. (Page 483.)

12. COSTS—JOINT DEFENDANTS—SEPARATE SUITS.—Where separate suits
are brought against two parties liable on a joint contract, and judg-
ment for costs recovered against one of them, which is satisfied, the
costs of the other suit should be charged against the plaintiff; but
where there has been no satisfaction of such first judgment, the plain-
tiff should have judgment for costs against the other promisor.
(Page 483.)

Appeal from .Conway Chancery Court; *Jeremiah G. Wal-
lace,* Chancellor; affirmed.

*Sellers & Sellers,* for appellant.

1. Appellant was entitled to indemnity to the extent of
one-half of the mortgage security. 48 Ark. 442; 50 Ark. 234;
59 Ark. 47; 34 Ark. 80; 60 Ark. 526.

Where different purchase money notes or different notes
secured by a mortgage on land are owned by different parties,
though maturing at different times, the amount realized, if
not sufficient to pay all, will be prorated. 92 Ark. 291; 51
Ark. 105; 13 Ark. 631; 2 Parsons on Contracts, (6 ed.) 633-4.

2. If appellant was liable at all, he should have been
sued in the foreclosure suit. The costs, therefore, of this
suit should be taxed against appellee. Kirby's Dig., § 4422.

3. The $1,000 collected on the insurance should
have been applied on the note sued on. J. H. Kissire who
procured the insurance requested that it be so applied, and
he had the right to apply it as he wished.

That the property had only one thousand dollars' in-
surance on it at the time it was destroyed, whereas it was
shown to be worth ten thousand dollars, appellee having the

right to insure it, was such negligent failure as would release a surety. 43 Am. St. Rep. 354; 41 Am. Dec. 685.

4. The pleadings show no right of recovery. This is a guaranty contract, if anything. The complaint alleges that "defendant is indebted to it on a promissory note," and copies the note, signed by J. H. Kissire, followed by the words, "indorsed, G. W. Kissire." 64 Ark. 648; 20 Mass. 385; 74 Mass. 589.

5. It needs no citation of authorities to support the proposition that an extension of time assented to, and which binds the creditor, releases the surety where appellee sued J. H. Kissire on the note and took a decree with a sixty days' stay, appellant not being a party, this released appellant as effectually as if a formal contract based upon a valuable consideration had been made.

6. No sufficient consideration is proved. An indorsement must be based on a consideration. 43 Ark. 21. To bind one who signs or indorses a note after it is executed and accepted, some new consideration must be shown. 24 S. W. 541; 90 S. W. 710; 13 Am. St. Rep. 46; 22 Pac. 72; 110 Mass. 389; 121 Mass. 117; 75 Fed. 926; 59 Me. 500; 45 Mo. App. 15; 10 Mo. App. 81.

*W. L. Moose* and *L. E. Hinton,* for appellee.

FRAUENTHAL, J. This is a suit brought by the Plunkett-Jarrell Grocer Company to recover a balance alleged to be due upon a note indorsed by the defendant G. W. Kissire. The note was executed by one J. H. Kissire as maker for $1,250, and is credited with $658.15. Judgment was sought for the balance due thereon against said indorser. The defendant resisted recovery principally upon the following grounds: (1) that his indorsement of the note was made for accommodation only, and without consideration; (2) that at the time the maker executed the note in litigation he also executed to plaintiff four other notes which, with the note sued on, aggregated $5,000, and that to secure all said notes he executed a mortgage to plaintiff on certain land, upon which was located a house, which was insured, and later burned, and that plaintiff had collected the insurance money, amounting to $1,000, of which $658.15 only was credited on

said note, whereas the entire amount thereof, it is contended, should have been credited thereon; that later the plaintiff had instituted a suit foreclosing said mortgage, which resulted in a decree ordering the sale of said land, which was made; and it is contended that a *pro rata* amount of the proceeds arising from the sale of said mortgaged land should be credited upon the note now sued on; and (3) that by the terms of said decree the time of payment of the note sued on was in effect extended without the defendant's consent, which resulted in his discharge therefrom.

Upon motion of the defendant, the case was transferred to the chancery court. At the hearing thereof in that court, the chancellor made findings and rendered judgment in favor of plaintiff for the amount sued for.

It appears from the testimony that the plaintiff is a mercantile corporation, located in the city of Little Rock, and that said J. H. Kissire, the maker of said note, was a merchant engaged in business at Morrilton. On January 19, 1906, said J. H. Kissire was indebted to plaintiff, and on that day it was agreed that plaintiff would furnish him additional money, and that he would secure the payment of the entire indebtedness. Thereupon the plaintiff furnished said money, which, with the past indebtedness amounted to $5,000, and therefor said J. H. Kissire signed five notes to plaintiff. Two of the notes were for $625 each, and due respectively on July 19, 1906, and 1907; three of the notes were for $1,250 each, and due respectively on January 19, 1908, 1909, and 1910. There is a conflict in the evidence relative to the agreement as to how these notes were to be secured at the time of their execution. On the part of the plaintiff, the testimony tended to prove that the notes were to be secured by the execution of a real estate mortgage and the guaranty of certain of the notes by the defendant as indorser. Thereafter J. H. Kissire signed the notes and executed a real estate mortgage to secure the same, and later the defendant indorsed three of the notes: the two notes for $625 each, and the note for $1,250, due January 19, 1908, which is the note now sued on. There was testimony tending to prove that the notes were retained by one J. H. Massey, the representative of plaintiff at Morrilton, until they were later indorsed by the defendant, and that

the transaction was not completed and the notes finally accepted by the plaintiff until these three notes were so indorsed. There was also testimony given by said Massey which tended to prove that sufficient insurance upon the property located upon the mortgaged land could not be obtained in reliable insurance companies, and on this account the plaintiff demanded, and said Kissire agreed to give, additional security, and in pursuance of that agreement the defendant indorsed said three notes. In his testimony, said J. H. Kissire stated that the defendant indorsed these notes three or four months after the execution thereof and without consideration. But he also stated that the reason why he indorsed them was that plaintiff demanded additional security because the insurance on the property was insufficient. The defendant testified that he indorsed the notes without consideration, but gave no explanation why the notes were indorsed by him after their execution.

The defendant indorsed the note sued on either at the time of its final execution and delivery to the plaintiff, or at least prior to any transfer thereof and before it had been put in circulation. He was therefore a surety on the note, although he signed same on the back thereof, instead of below the name of the maker on the face. *Killian* v. *Ashley*, 24 Ark. 511; *Nathan* v. *Sloan*, 34 Ark. 524; *Heise* v. *Bumpass*, 40 Ark. 546; *Jones* v. *Bank of Pine Bluff*, 80 Ark. 285; *Lake* v. *Little Rock Trust Co.*, 77 Ark. 53; *Porter* v. *Huie*, 94 Ark. 333.

It is well settled that the promise made by a surety, like any other contract, must be supported by a consideration. *Platt* v. *Snipes*, 43 Ark. 21; 32 Cyc. 56. But the consideration need not be an advantage received by the surety himself. It is a sufficient consideration for such promise of the surety that it is founded upon the considerstion then received by the principal debtor, or that by such promise a disadvantage has resulted to the creditor. In *Williams* v. *Perkins*, 21 Ark. 18, the rule is thus stated: "If the debt or obligation of the principal debtor is already incurred previous to the undertaking of the surety, then there must be a new and distinct consideration to sustain the promise of the surety. But if the obligation of the principal debtor be founded upon a good consideration, and at the time it is incurred or before that time

the promise of the surety is made and enters into the inducement for giving the credit, then the consideration for which the principal debt is contracted is regarded as a valid consideration also for the undertaking of the surety." *Harrell* v. *Tenant*, 30 Ark. 684.

In the case at bar, the testimony tended to prove that it was agreed by plaintiff and the maker of the note at the time the consideration passed to him that the note should be secured by the personal indorsement of the defendant before it would be accepted by the plaintiff and considered as finally executed. It was signed by the maker some time before it was actually signed by the defendant; but it was held by Mr. Massey awaiting the indorsement of it by defendant, and the transaction under which the note was accepted was not consummated until the note was indorsed by the defendant. This was in effect an indorsement of the note by the defendant at the same time that it was executed by the maker, and the consideration therefor flowing to the maker was sufficient to support the promise of its guaranty by the defendant.

We are also of the opinion that there was sufficient consideration to support the defendant's promise to guaranty the note if it was indorsed by him, for the reason that sufficient insurance could not be obtained upon the mortgaged property. By the terms of the mortgage it was provided that the mortgagor should keep the property insured for its full insurable value for the benefit of plaintiff, and, upon failure to provide and maintain such insurance thereon acceptable to plaintiff, default would be made in the mortgage. It appears from the testimony of said Massey that sufficient insurance could not be obtained on the property in solvent fire insurance companies, and upon failure to obtain such insurance the plaintiff demanded additional security before it would agree to extend the indebtedness and abstain from declaring a forfeiture of the mortgage. Thereupon, for the purpose of securing the extension of the indebtedness, and to prevent a default in the mortgage, defendant indorsed the three notes. The agreement of extension made by plaintiff was sufficient consideration to support the promise of defendant to guaranty these notes indorsed by him. The chancellor found that the promise of defendant as surety upon the notes was supported by sufficient consider-

ation, and we do not think that this finding is clearly against the weight of the evidence. Therefore it should not be disturbed.

It is urged by counsel for defendant that he should be entitled to credit upon the note for the *pro rata* amount of the proceeds of the property sold under said mortgage. The real estate mortgage secured the payment of five notes, aggregating $5,000, one of which is the note sued on. The mortgage was executed, not to defendant, but to the plaintiff, to secure all of said notes. The only right which defendant could have to any security provided by said mortgage is founded upon the doctrine of subrogation. If the mortgage had been executed to secure notes which were made to different payees, then the different payees would have an equitable right to equal contribution from the proceeds of the mortgaged property. *Penzel* v. *Brookmire*, 51 Ark. 105; *Cook* v. *Collins*, 92 Ark. 291.

But in the case at bar the mortgage was executed only to the plaintiff, and to secure the payment of several notes, all of which were executed to it. A surety upon these notes would, upon payment thereof, be subrogated to the rights of the creditor to any security held therefor by him. His right to the mortgage security is not an independent right, but derivative from the creditor upon the equitable principle of subrogation. But such equitable right of the surety can not be enforced so as to interfere with the rights of the mortgage-creditor, whose equities are superior to those of the surety, for the reason that the mortgage is given to him and not to the surety. In this case the mortgage secured five notes; and, before the surety can claim the benefit of any security growing out of the mortgage, the plaintiff is entitled to payment of all five notes secured by said mortgage. As was said by this court in the case of *Bank of Fayetteville* v. *Lorwein*, 76 Ark. 245: "The right of subrogation can not be enforced until the whole debt is paid; and, until the creditor be wholly satisfied, there ought to and can be no interference with his rights or his securities which might, even by bare possibility, prejudice or embarrass him in any way in the collection of the residue of his claim." *Richeson* v. *National Bank of Mena*, 96 Ark. 594.

The plaintiff instituted proceedings to foreclose said

mortgage. Thereunder, the mortgaged property was sold, and the proceeds arising therefrom were not sufficient to pay the notes covered by the mortgage other than the note herein sued on. It follows that defendant is not entitled to have credit on this note for any of the proceeds arising from the sale of said mortgaged property.

It is urged by counsel for defendant that the entire amount of the insurance money covering the house on the mortgaged premises should be credited on this note. It appears that the house was insured for $1,000, with loss payable to plaintiff as mortgagee, to be applied on the indebtedness covered by the mortgage. The house was destroyed by fire, and the insurance money was collected by plaintiff in July, 1907. At that time the two first notes of $625 each, mentioned in the mortgage, had been paid, and the next maturing note was the note herein sued on. At that time J. H. Kissire, who had been trading with plaintiff, had become further indebted to it upon an account in the sum of $341.85. The plaintiff applied the payment of insurance money to the payment of said account, and the balance, towit, $658.15, was credited upon the note herein sued on. The insurance money arose from the mortgage property, and was collected by the plaintiff under and by virtue of the terms of said mortgage, which provided that the policy covering the property should be payable to the plaintiff as mortgagee. The insurance money represented the mortgaged property, and was in effect an equitable conversion of it. By virtue of the contract contained in the mortgage, providing for insurance, it was the same as if the mortgaged house had been sold and the proceeds arising therefrom had been paid to plaintiff. The execution of the mortgage was an appropriation of the mortgaged property to the payment of the mortgage indebtedness. The mortgage constituted an agreement made by the parties whereby the proceeds arising by sale or otherwise from the mortgaged property should be applied to the mortgage indebtedness. Thereafter, the mortgaged property and the proceeds arising therefrom could not be applied to any other debt without the consent of both parties. Neither party, without the consent of the other, could change the appropriation of the mortgaged property made by the mortgage contract. *Greer* v. *Turner,* 47 Ark. 17;

*Caldwell* v. *Hall*, 49 Ark. 508; *Fort* v. *Black*, 50 Ark. 256; *Faisst* v. *Waldo*, 57 Ark. 270; *Bonham* v. *Johnson*, 98 Ark. 459.

The insurance money was therefore by the mortgage contract appropriated to the payment of the mortgage indebtedness, and could not be applied to the payment of any other debt by either party without the consent of the other. Like the proceeds arising from the sale of the mortgaged property, it was appropriated by the mortgage itself to the payment of all the mortgage indebtedness, and to no particular portion thereof. The surety was not entitled to ask that it be applied to any particular note, any more than he was entitled to ask that the proceeds from the sale of the mortgaged property should be applied to any particular note. His rights arose only after the mortgage creditor had received payment of his entire mortgage indebtedness. By the defendant's indorsement of this note, the plaintiff received security additional to the mortgage for the payment of the notes. It was manifestly the intention of the parties to increase, and not to diminish, plaintiff's security by the additional security obtained by defendant's personal endorsement of the three notes. The indorsement of the note by defendant was for the benefit of plaintiff, and the mortgage executed to plaintiff was also for its benefit. The mortgage was not executed to the defendant to secure him for any liability which he incurred by reason of his indorsement of the notes. If he desired security for such indorsement, he should have obtained it by contract, and, not having done so, the court can not make a contract for his benefit. His right to any interest in the mortgaged property, and therefore to the insurance money arising therefrom, springs solely from equitable principles which give him such interest when he has paid to the mortgage creditor his mortgage debt. The maker could not make application of the proceeds of the mortgaged property, and therefore of the insurance money, to this note, because by so doing this note would be discharged, and the surety thereon relieved of payment before the other notes, which were unindorsed, but secured by the mortgage, were paid. The effect of this would be to make the mortgage for the benefit of the indorser, instead of the mortgagee, when the plain intention of the parties was to make this personal indorsement an additional security for

the benefit of the plaintiff. The mortgage itself represented the agreement of the parties by which the proceeds arising from the mortgaged property should be appropriated to the payment of the mortgage indebtedness, and the indorsement by defendant represented a contract whereby it was provided that if the mortgaged property was not sufficient to pay said mortgage indebtedness, then the indorser would pay any remainder on said three notes. To permit the maker of the note to make an application of the proceeds of said mortgaged property, and therefore of said insurance money, in any other manner would be contrary to the agreement thus made by them when the mortgage was executed, and therefore could not be done without the consent of both parties. It follows, therefore, that, until all the other notes were paid, defendant was not entitled to have any proceeds arising from the mortgaged property or the insurance money applied to this note sued on, without the consent of all parties.

Of the insurance money, the plaintiff applied $658.15 to the note sued on, and $341.85 to an account which it claimed was also secured by the mortgage, which stated that it secured the above five notes and "all future indebtedness." But, even if we should hold that said account was not secured by said mortgage, and that $341.85 should be applied only on said notes, it would still leave unpaid upon said notes an amount in excess of the note now sued on. The application of said $341.85 to the other notes, instead of to the account, together with the application of all the proceeds of the mortgaged property to said notes, would not pay the other notes secured by the mortgage. The defendant was therefore not affected or injured by the fact that, it was applied to the account, instead of to the notes secured by the mortgage.

A suit was instituted by the plaintiff upon all the unpaid notes mentioned in said mortgage, including the note herein sued upon for the foreclosure of said mortgage. By the decree of foreclosure, it was provided that the sale of the mortgaged land should be postponed for sixty days, and it is urged by defendant that this was in effect an extension of the payment of the note sued on without his consent, and he as surety was thereby discharged. But an extension by a creditor of the debt of the principal which will work a discharge of the surety

without his consent must be made by the agreement of such creditor. There must be a binding agreement made by the creditor for an extension for a definite time and supported by sufficient consideration before there can be any discharge of the surety. Brandt on Guaranty and Suretyship, 376. The giving of time in said decree for the sale of the land was done by the court, and not by the agreement of plaintiff, nor was it made upon any consideration. In the case of *Berton* v. *Anderson,* 56 Ark. 470, it was held that a surety on a guardian's bond was not released by the court's extension of the time within which the guardian must account for the ward's money. In that case it was held that the court did not occupy the position of creditor, and that the action of the court in extending the time of payment was not an agreement of the creditor which would work a discharge of the surety. The action of the court in the decree made by it did not result in discharging the defendant from this note.

It is also claimed that plaintiff failed to obtain sufficient insurance upon the mortgaged property which was destroyed by fire, and for this reason that the defendant was entitled to credit upon the note for the difference between the value of the property destroyed and the amount for which it was insured. The mortgage, however, provided that the mortgagor, and not the plaintiff, should provide and maintain insurance upon the property. While it also provided that the plaintiff might, at its option, take out insurance thereon, the plaintiff did not obligate itself to do this, and was therefore under no liability for failure to further insure the property.

It is finally urged that the costs of this suit should be adjudged against plaintiff because it could have made this defendant a party to the suit instituted by it wherein foreclosure of the mortgage was obtained, and therein could have sued him with the principal upon the note, which was not done. The proceeds of the sale of the mortgaged property made under the decree in that case were not sufficient to pay all said notes, and the plaintiff thereupon instituted this action against defendant upon the note indorsed by him. It is provided by section 4422 of Kirby's Digest as follows: "No creditor on any joint or joint and several obligation shall have more than one satisfaction and costs in one suit." Where

separate suits are brought against several parties liable on a joint contract, and judgment and costs are recovered against one of them, which are satisfied, then the costs of the other suits should be charged against the plaintiff. 5 Enc. Pl. & Prac. 140. But where the holder of the joint and several obligation has brought a separate action against each of the promisors, and there has been no satisfaction of the first suit brought, then the plaintiff should also have judgment for his costs against the other promisor. *Simonds* v. *Center*, 6 Mass. 18. In other words, by virtue of the above statute, the plaintiff should only have one satisfaction of his debt and one satisfaction of costs; but he should obtain both the satisfaction of his debt and also the satisfaction of the costs of one suit.

In the case at bar, the proceeds of the mortgaged property under said foreclosure suit were not sufficient to pay the judgment or decree recovered. It is true that out of the proceeds of said sale the costs of that suit were first paid; but this was in effect a payment of such costs by the plaintiff, because it reduced the amount which plaintiffs received upon its judgment to the extent of said costs and a large portion of his judgment remained unpaid. The plaintiff not having received satisfaction of his costs in the first suit brought against the principal on the note, he was entitled to have judgment for costs in this suit brought against the other obligor.

On an examination of the entire record, we find no error committed by the chancellor, and his decree must accordingly be affirmed.

HART and KIRBY, JJ., dissent.