**Richard B. SURECK et al., Plaintiffs,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY et al., Defendants.**

**No. H–72–C–3.**

United States District Court,
W. D. Arkansas,
Harrison Division.

Jan. 5, 1973.

---

**808**

George C. Rabens, of Rabens, Formusa & Glassman, Chicago, Ill., Jennie Pond, Mountain Home, Ark., for plaintiffs.

Thomas B. Tinnon, Mountain Home, Ark., for First State Bldg. & Loan Ass'n.

Memorandum Opinion

HENLEY, District Judge.

This diversity case presents a controversy as to distribution of the proceeds of a settlement or adjustment of claims arising under three fire insurance policies covering motel property in Bull Shoals, Marion County, Arkansas. The cause has been tried to the Court, and this Memorandum Opinion incorporates the Court's findings of fact and conclusions of law.

Plaintiff, Richard B. Sureck, is a citizen of Illinois as are the other plaintiffs, who are the members of the Chicago law firm of Rabens, Formusa and Glassman, hereinafter referred to as the Firm. The suit was commenced in the Chancery Division of the Circuit Court of Cook County, Illinois. The defendants named originally were United States Fidelity & Guaranty Co., Maryland Casualty Co., St. Paul Fire & Marine Insurance Co., and First State Building & Loan Association of Mountain Home, Arkansas, which entered its appearance in the case.

The suit was timely removed by the defendants to the United States District Court for the Northern District of Illinois on the basis of complete diversity of citizenship and an amount in controversy substantially in excess of $10,000, exclusive of interest and costs. Thereafter on motion of the defendant Association the case was transferred here under the provisions of 28 U.S.C.A., section 1404 (a).

While the suit was pending in federal court in Illinois, the insurance company defendants discharged their liabilities by paying a sum somewhat in excess of $25,000 into the Registry of the Court, and passed out of the case. So, as of this time the case stands as a controversy between the plaintiffs on the one hand and the Association on the other hand.

The Association contends that by virtue of standard mortgage clauses appearing in the policies issued by the respective insurers its claim to the proceeds of the settlement takes precedence over a claim for an attorney's fee put forward by the Firm following its performance of a contract between it and Mr. Sureck. Sureck and the Firm claim that the latter's fee has priority over the claim of the Association as mortgagee. The fund in

Court is not sufficient to discharge the balance due on the mortgage debt. The parties have stipulated that their rights are governed by the common law of Arkansas.

The property involved in the case consists of four improved lots in the Town of Bull Shoals. On August 26, 1967, Elzie D. Ratliff and his wife, Faye E. Ratliff, were the record owners of the lots. On that date they executed and delivered to the Association a note and mortgage evidencing and securing a debt to the Association in the principal sum of $40,000, bearing interest at the rate of seven percent per annum, and payable in monthly installments of $310 each. The mortgage required the mortgagors to carry insurance for the benefit of the mortgagee and to protect the property "from waste, injury or unusual deterioration and, without subjecting the property to any statutory lien, to make all replacements and repairs necessary to keep the . . . property in good physical condition. . . ." This instrument was duly filed for record in Marion County.

Thereafter, Mr. and Mrs. Ratliff sold the property, subject to the mortgage, to plaintiff, Sureck, who is a retired Chicago policeman and who at all times here pertinent seems to have been a domiciliary of that City.

In November 1970 Mr. Sureck obtained through a local insurance agency in Mountain Home the three insurance policies that have been mentioned. Each policy contained a loss payable clause in favor of the Association, and, as indicated, each policy contained a standard mortgage clause which provided among other things that the rights of the mortgagee should not be impaired or diminished by any act or default on the part of the mortgagor who was named as the insured in each policy. After the policies were issued, they remained in the possession of the Association.

In February 1971 while the policies were in effect the improvements on the property were severely damaged by a fire of undetermined origin. The loss was investigated by personnel of the Har-rison, Arkansas, office of General Adjustment Bureau, Inc., representing the insurers. At the early stages of the investigation arson was suspected, and the companies were unwilling initially to adjust the loss.

Mr. Sureck came to Mountain Home and discussed his problem with Mr. Sam Powell, the President of the Association. Mr. Powell suggested that Mr. Sureck employ local counsel experienced in trial work, and recommended a local attorney. While Mr. Powell testified that his advice to Sureck was prompted by the possibility that the latter would or might be prosecuted criminally for arson, the Court is of the opinion that Powell probably knew that if Sureck employed counsel the employment would go beyond a defense of an arson charge and would extend to an attempt to collect from the insurance companies under the policies.

Sureck contacted the attorney recommended by Mr. Powell, but for some reason the attorney was not in a position to accept the employment. Since Mr. Sureck lived in Chicago and since all three insurance companies did business in Illinois, the local attorney suggested to Sureck that he employ Chicago counsel.

Mr. Sureck retained the Firm in March 1971 and entered into a written contract with it. That contract provided that the Firm would undertake to collect under the policies on the basis of a contingent fee of 25 percent of ultimate collection plus expenses incident to the collection. No contention is here made that the 25 percent contingent fee agreed upon by Sureck and the Firm was an unreasonable or improper fee.

The Court finds that during the spring and up into the summer of 1971 the Firm negotiated with General Adjustment Bureau looking toward a settlement of the claims either with or without litigation. The Court finds that the Association knew that Sureck had employed the Firm and knew that the Firm was negotiating with the insurers or their agent and did not object to the actions of Sureck or the Firm. On the other hand,

the Association did not at any time expressly agree to subordinate its security interest in the insurance proceeds to any claim of the Firm for compensation for its representation of Sureck, and there is no evidence that the Association knew what fee arrangement, if any, Sureck had made with the Firm.

While the Association knew that the Firm was representing Sureck and presumably knew that the Firm would expect to be paid for its services, the Firm was well aware of the fact that the insured property was mortgaged to the Association, and that the Association had the policies in its possession. In that connection the Court finds that in the early summer of 1971 the Firm requested the Association to supply it with copies of the policies for use should litigation become necessary. There is no evidence that the Association complied with that request; it simply did not respond to the Firm's letter requesting copies of the documents.

Although the Firm was aware of the mortgage in favor of the Association and knew that the Association was holding the policies, the Firm seems never to have made any effort to reach an agreement with the Association about a fee.

By late July or early August 1971 the Firm was able to reach a settlement with the insurance companies. Those companies drew their respective drafts in favor of the Association, Mr. Sureck, and the Firm. The Association did not quarrel with the amount of the settlement, which resulted from the efforts of the Firm, but claimed that it was entitled to receive all of the proceeds of the settlement to be applied on the mortgage debt. If that position is sustained, the Firm will have to look to Sureck personally for the payment of the 25 percent fee; there is no evidence here that the Firm incurred any substantial expenses in effecting the settlement.

Plaintiffs argue that the settlement was effected solely through the efforts of the Firm, and that it would be inequitable to subordinate the Firm's claim for reasonable compensation under its contract with Sureck to the security interest of the Association which might well mean that the Firm will have done its work gratuitously.

Such a claim is not without its appeal and under Arkansas law would be sustainable in certain contexts. See Little Rock Road Machinery Co. v. Light, 1966, 240 Ark. 1012, 403 S.W.2d 726, and Winfrey & Carlile v. Nickles, Administrator, 1955, 223 Ark. 894, 270 S.W.2d 923. However, upon consideration the Court is convinced that in view of the provisions of the mortgage and of the policies the claim of the Association is entitled to priority over the claim of the Firm.

 It is well established law in Arkansas that where a mortgage requires the mortgagor to keep the premises insured for the protection of the mortgagee, and where the policies issued to the mortgagor contain loss payable clauses in favor of the mortgagee and mortgage clauses such as the ones involved in this case, the parties have effected a pre-appropriation of insurance proceeds to payment of the mortgage debt, and such proceeds cannot be used for any other purpose without the consent of both parties. Price v. Harris, 1972, 251 Ark. 793, 475 S.W.2d 162; Sharp v. Pease, 1936, 193 Ark. 352, 99 S.W.2d 588; Kissire v. Plunkett-Jarrell Grocer Co., 1912, 103 Ark. 473, 145 S.W. 567; Bonham v. Johnson, 1911, 98 Ark. 459, 136 S.W. 191; Consolidated Underwriters of South Carolina Insurance Co. v. Bradshaw, W.D.Ark., 1955, 136 F.Supp. 395. As is sometimes said, where the property is destroyed by fire, the insurance proceeds stand in place of the property and are in effect an equitable conversion of it. Kissire v. Plunkett-Jarrell Grocer Co., supra, 103 Ark. at 480, 145 S.W. at 570.

In *Bradshaw,* supra, Judge Miller, after pointing out the distinction between a "standard" mortgage clause, such as the ones involved here, and an "open" mortgage clause, went on to hold on facts quite similar to those presented here that the claim of a mortgagee under standard

mortgage clauses is superior to the claim for compensation of an attorney employed by the mortgagor-insured to enforce payment under the policies.[1]

And in Price v. Harris, supra, the Arkansas Supreme Court refused to make an allegedly "equitable" distribution of insurance proceeds between mortgagee and mortgagor where such a distribution would have been in contravention of the terms of the contract between the parties.

The Court has considered Little Rock Road Machinery Co. v. Light, supra, and agrees with counsel for the Association that it is not in point here since in that case the conditional vendee (mortgagor) was a co-insured under a policy issued to the conditional vendor (mortgagee), and the case presented no problems arising out of a loss payable clause or mortgage clause in the policy.

The Court has also considered Winfrey & Carlile v. Nickles, Administrator, supra, and does not think that it is in point here since the attorney involved in that case was not employed by a mortgagor, and the attorney's adversary in that case was not a mortgagee although it did have a statutory lien on the proceeds of a tort judgment under relevant provisions of the Arkansas Workmen's Compensation Act.

When all is said and done, the Court concludes that the Firm when it undertook the representation of Sureck without making any arrangements with the Association, assumed the risk that its claim for compensation would turn out to be inferior to the claim of the mortgagee as far as insurance proceeds were concerned. To put it another way, while the Firm has unquestionably earned its fee, its claim to the insurance proceeds is subject to the contract rights of the Association. True, the efforts of the Firm benefited the Association as well as Sureck, but that fact alone is not sufficient to give the Firm's claim priority.

See *Bradshaw,* supra, 136 F.Supp. at 401, and St. Paul-Mercury Indemnity Co. v. Lanza, W.D.Ark., 1955, 131 F.Supp. 684.

A judgment dismissing the complaint of Sureck and the Firm will be entered.

---

1. Judge Miller also held in *Bradshaw* that under the facts in that case the mortgagee was entitled to priority with respect to the proceeds of policies containing "open" mortgage clauses. The Court is not concerned with such policies in this case.