FIREMAN'S FUND INSURANCE COMPANY and Dale
M. TAYLOR *v.* Rex B. ROGERS and Terrance O.
BUCHANAN, formerly d/b/a REX ROGERS
CONSTRUCTION COMPANY, a Copartnership

CA 85-498                                    712 S.W.2d 311

Court of Appeals of Arkansas
En Banc
Opinion delivered June 25, 1986

*Rieves & Mayton*, by: *Elton A. Rieves, IV*, for appellants.

*Brick & Stokes, P.A.*, by: *Jake Brick*, for appellee Rex B. Rogers.

*Nance, Nance & Fleming, P.A.*, by *C.B. Nance, Jr.*, for appellee Terrance O. Buchanan.

TOM GLAZE, Judge. Appellants, Fireman's Fund Insurance Company (Fireman's) and Dale M. Taylor, appeal a decision of the Crittenden County Chancery Court granting appellees' motions to dismiss.[1] They contend that the trial judge erred in finding that appellees were relieved of their obligations under a mortgage indebtedness which appellees previously had assumed as intervening or remote grantees.

---

[1] To secure the original indebtedness on the property involved in this lawsuit, Dale M. Taylor, trustee for Commercial National Mortgage Company, was delivered the deed of trust which Commercial National eventually assigned to Fireman's before Fireman's brought this foreclosure action. Because Taylor is a nominal party, we make reference only to Fireman's when discussing appellant's arguments.

On August 1, 1977, appellees purchased property from Mr. and Mrs. Jerry Briggs. As part of the consideration, appellees assumed the Briggs's obligations under the mortgage the Briggses had with Commercial National Mortgage Company (Commercial National). Three months later, appellees conveyed the subject property to the Gaymans, who also assumed the mortgage indebtedness. The Gaymans procured from Fireman's a homeowners insurance contract which, among other things, covered direct loss by fire to the property. On October 10, 1983, the primary building on the property was partially destroyed by fire. Fireman's, giving suspected arson as the reason, denied coverage to the Gaymans.

The Gaymans subsequently sued Fireman's, and the trial court found Fireman's had no liability. Thereafter, Fireman's, in accordance with a standard or union mortgage clause in its policy, fully satisfied the deed of trust held by Commercial National in return for Commercial National's assignment of that deed of trust and its release of Fireman's from any further claims. The Gaymans later defaulted in their note payments and Fireman's commenced this foreclosure action against all parties in the chain of title, including the appellees.

In their motions to dismiss, appellees argued that Commercial National's unilateral release of Fireman's also discharged their liability under the trust deed note. In granting their motions, the trial judge found that (1) after the fire, the property and the proceeds from the insurance policy secured the trust deed note; (2) Fireman's took an assignment of the obligation owed to Commercial National and secured a release from Commercial National of Fireman's obligations under the policy; (3) the debt owed Commercial National had been paid in full by Fireman's when they secured an assignment of the obligation; and (4) by Commercial National releasing Fireman's of its obligations under the insurance policy, the collateral was impaired and appellees were relieved of any further obligation on the mortgage. On appeal, Fireman's contends that the trial court erred in applying the law of Arkansas. We agree and reverse.

Appellees first argue that Fireman's was obligated to pay the replacement cost or actual loss of the building rather than pay the mortgage indebtedness, which was the lesser of these amounts.

Because Fireman's did not repair the damage to the building and thereby impaired the collateral securing the mortgage against the property, the trial court, appellees contend, properly estopped Fireman's from foreclosing against them, as remote grantees and innocent third parties. We believe appellees are wrong for several reasons.

As was stated in *Brown* v. *Summerlin Associates, Inc.*, 272 Ark. 298, 301, 614 S.W.2d 227, 229 (1981), there is a presumption that parties contract only for the benefit of themselves, and a contract will not be considered as having been made for the use and benefit of a third party unless it clearly appears that such was the intention of the parties. We also note the general rule that insurance policies are personal contracts between the insured and the insurer, and not contracts running with the property. *National Bedding & Furniture Industries, Inc.* v. *Clark*, 252 Ark. 780, 481 S.W.2d 690 (1972). In the instant case, the Fireman's policy, covering the subject property, reflected the Gaymans as the insured and identified Commercial National as the mortgagee. In addition, the policy defined "insured," in pertinent part, to include the Gaymans, their relatives and any other person under twenty-one years of age in the care of the insured. In sum, the appellees were not mentioned in the policy and, unless we place ourselves in the position of rewriting the terms of that policy, appellees clearly were not named as persons entitled to benefits under the policy's provisions.

Nor can we agree that the appellees were intended to benefit indirectly—relieved as obligors under the deed of trust—by Fireman's payment to Commercial National pursuant to the mortgage clause in the Gaymans' policy.[2] That standard mort-

---

[2] 12. Mortgage Clause. The word "mortgagee" includes trustee. If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you as interests appear. If more than one mortgagee is named the order of payment shall be the same as the order or precedence of the mortgages. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee: (a) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware; (b) pays any premium due under this policy on demand if you have neglected to pay the premium; (c) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit against Us and Loss Payment apply to the mortgagee. If the policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date

gage clause merely provided that any damage to the subject property by the Gaymans, as the insureds, would not relieve Fireman's of its obligations to pay Commercial National the unpaid principal plus accrued interest due under the trust deed note if Commercial National, in turn, would assign its beneficial interest in the trust deed and note to Fireman's.

■■ The general rule is that under a standard mortgage clause the insurer has entered into a separate contract with the mortgagee just as if the latter had applied for the insurance entirely independently of the mortgagor. So far as the mortgagor is concerned, such a policy operates over and above the mortgagee's interest. 5A J. Appleman, *Insurance Law and Practice* § 3401, at 287-88 (rev. ed. 1970). It is also settled law that, if the insurer has no liability to the mortgagor, the proceeds of insurance on the mortgaged property, when paid to the mortgagee, need not be applied in reduction of the mortgaged debt. *See* 59 C.J.S. *Mortgages* § 328, at 453 (1949). We recognize the cases of *United Stores of America, Inc.* v. *Fireman's Fund Insurance Co.,* 420 F.2d 337 (8th Cir. 1970), and *Farm Bureau Mutual Insurance Co.* v. *Shaw,* 269 Ark. 757, 600 S.W.2d 432 (Ark. App. 1980), cited by appellees, but we find them inapposite, since they do *not* involve an insurer's payment to a mortgagee under a standard mortgage clause when an insured mortgagor caused the loss to the covered property and, therefore, was not entitled to proceeds under the terms of the policy.[3]

---

cancellation takes effect. If we pay the mortgagee for any loss and deny payment to you: (a) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property, or (b) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

[3] The written dissent unfortunately relies on cases wherein the insured mortgagor did *not* commit arson or cause the damage to the subject property. In applying those holdings to the facts here, the dissent is in gross error when it suggests this case in any way affects existing law. It is too obvious for argument that the law is, and remains, that where property is insured for the benefit of the mortgagee, such a mortgage payable clause constitutes an appropriation in advance of the insurance money to the satisfaction of the mortgage indebtedness. This rule of law clearly is inapplicable when the *insured mortgagor causes the loss.* To hold otherwise would permit the insured mortgagor to benefit from his or her wrongful act by being relieved from liability on the mortgage

■ Here, the Gaymans, Fireman's, and Commercial National were the only persons who had any privity in this matter, and because they caused the loss, the Gaymans were found not entitled to any direct benefits or proceeds under the policy. Nor should they benefit indirectly by having their mortgage indebtedness extinguished merely because the insurer paid the mortgagee pursuant to a separate agreement (standard mortgage clause) under that policy. While we say *United Stores* is in no way controlling here, we do note the court's recognition there of the rule that, generally, subrogation may be allowed when the insurer, having a policy defense against the owner or mortgagor, pays the mortgagee pursuant to a loss payable clause in the policy.

Appellees next argue that Fireman's rights of subrogation are invalid as to any party other than the Gaymans. Again, the law fails to support appellees' contention. The case of *Hill* v. *Massachusetts Fire and Marine Insurance Co.*, 195 Ark. 602, 113 S.W.2d 104 (1938), involved an insurance policy which provided that, when the insurer paid the mortgagee for a loss and denied coverage to the mortgagor, the insurer was subrogated to the extent of such payment to all of the rights of the mortgagee under the mortgage. Where the mortgaged property was destroyed by the mortgagor, the supreme court held the assignment of the mortgage from the mortgagee to the insurer was valid, stating:

> In consideration of the payment of this insurance the mortgagee transferred and assigned to the insurance companies a proportionate interest in the mortgage and the debt secured by it. We know of no reason why the provision to this effect contained in the insurance policies should not be enforced, especially so after the mortgagee had assigned that interest, a thing which could have been done for a valuable consideration, although there had been no contractual provision requiring it.

*Id.* at 605-06, 113 S.W.2d at 106.

■ In the instant case, the appellees remained contractually liable on their prior assumption of the mortgage indebtedness

---

indebtedness.

on the subject property, *Elliott* v. *Cravens*, 182 Ark. 893, 33 S.W.2d 373 (1930), and it is on the basis of this contractual obligation that appellees became personally liable to Fireman's—assignee of Commercial National—and were made parties to this foreclosure action. Applying the holding in *Hill* to the facts here, Fireman's should be allowed to enforce the terms of its newly-acquired deed and note from Commercial National against appellees since the appellees remained contractually liable on that previously assumed debt.

■ Finally, appellees contend they should not be responsible for the Gaymans' wrongdoing and Fireman's should not be allowed to receive a "windfall" by collecting the mortgaged indebtedness from innocent third parties. Of course, the short answer to appellees' contention here is that Fireman's foreclosure action is not based upon the Gaymans' conduct, tortious or otherwise, but is based upon the breach of contractual obligations contained in the trust deed and note which had been assumed by the appellees. In this action, Fireman's is merely trying to recoup the amount it paid Commercial National which is in accordance with the contractual right Fireman's was given by the standard mortgage clause in the policy covering the subject property. For appellees to label this a "windfall," we believe, is a misnomer.

Because we hold the trial court's decision is contrary to the law, we reverse and remand this cause with directions to reinstate Fireman's action against appellees.

Reversed and remanded.

MAYFIELD, J., dissents; CORBIN, J., concurs.

MELVIN MAYFIELD, Judge, dissenting. The majority opinion in this case is bad news for anyone in Arkansas who has ever sold a house with a mortgage on it. The opinion holds that where the owner of a house that is mortgaged sells it to another person who assumes the mortgage and insures the house for his and the mortgage company's benefit, the seller will still be liable for the amount due on the mortgage if the purchaser is unable to collect on the insurance, even though the mortgage company collects from the insurance company for the full amount of the indebtedness secured by the mortgage. I do not think that this is or should be the law and I dissent from the holding of the majority opinion.

In *Sureck* v. *United States Fidelity & Guaranty Co.*, 353 F. Supp. 807 (W.D. Ark. 1973), the court said:

> It is well established law in Arkansas that where a mortgage requires the mortgagor to keep the premises insured for the protection of the mortgagee, and where the policies issued to the mortgagor contain loss payable clauses in favor of the mortgagee and mortgage clauses such as the ones involved in this case, the parties have effected a pre-appropriation of insurance proceeds to payment of the mortgage debt, and such proceeds cannot be used for any other purpose without the consent of both parties. *Price* v. *Harris*, 1972, 251 Ark. 793, 475 S.W.2d 162; *Sharp* v. *Pease*, 1936, 193 Ark. 352, 99 S.W.2d 588; *Kissire* v. *Plunkett-Jarrell Grocer Co.*, 1912, 103 Ark. 473, 145 S.W. 567, *Bonham* v. *Johnson*, 1911, 98 Ark. 459, 136 S.W. 191; *Consolidated Underwriters of South Carolina Insurance Co.* v. *Bradshaw*, W.D. Ark., 1955, 136 F.Supp. 395. As is sometimes said, where the property is destroyed by fire, the insurance proceeds stand in place of the property and are in effect an equitable conversion of it. *Kissire* v. *Plunkett-Jarrell Grocer Co.*, *supra*, 103 Ark. at 480, 145 S.W. at 570.

More recent cases to the same effect are: *Rea* v. *Ruff*, 265 Ark. 678, 580 S.W.2d 471 (1979); *Farm Bureau Mutual Ins. Co.* v. *Shaw*, 269 Ark. 757, 600 S.W.2d 432 (Ark. App. 1980). *See also United Stores of America, Inc.* v. *Fireman's Fund Ins. Co.*, 420 F.2d 337 (8th Cir. 1970), where the court said:

> In our view, the essential question presented here is simply whether the insurance policies were procured for the benefit of the lessor-mortgagor. If so, Mercantile, as mortgagee, upon receipt of the insurance proceeds, became obligated to apply those funds to the mortgage note, as it in fact did, and no right of subrogation survives to the insurer. (Citations omitted.)

In the instant case, it is undisputed that the appellees, Rex Rogers and Terrance Buchanan, purchased property that had a mortgage on it and that they assumed that mortgage. It is also undisputed that they sold the house to Mr. and Mrs. Mark Gayman who assumed the mortgage; that the Gaymans obtained

an insurance policy on the property which insured their interest and the interest of the mortgage holder; that the house on the property was partially destroyed by fire; and that the insurance company refused to pay the Gaymans, apparently because the company thought the Gaymans caused the fire. Also without dispute is the fact that the Gaymans sued the insurance company and lost, and that the company then paid the mortgage holder the entire amount due on the mortgage and received an assignment of the mortgage and note which it secured. Regardless of these undisputed facts and the law quoted above, the majority opinion finds Rogers and Buchanan liable to the insurance company for what the insurance company paid the mortgage company.

The majority opinion suggests that, since there was a valid defense against the Gaymans, the mortgage holder did not have to credit the insurance proceeds on the mortgage debt because (1) the insurance company's contract was between itself, the Gaymans and the mortgage holder, and Rogers and Buchanan were not parties thereto, and (2) the Gaymans should not be allowed to benefit indirectly by having their mortgage indebtedness paid when they could not recover directly from the insurance company.

I recognize the general rule set out in the majority opinion, from 59 C.J.S. *Mortgages* § 328 at 453 (1949), that if the insurer has no liability to the mortgagor, the proceeds of the insurance on the mortgaged property, when paid to the mortgagee, need not be applied in reduction of the mortgaged debt. However, the cases cited in support of this statement in C.J.S., both in the main volume and in the cumulative pocket part, give no reason for the rule other than to state that the mortgagee's insurance coverage, in the event there is no liability to the mortgagor, is in the nature of a separate contract. I do not find this reasoning very persuasive; and in any event, it would not apply in this case because here it is undisputed that the Gaymans obtained insurance for the benefit of the mortgage holder, and it is clear that contracts made for the benefit of third parties are actionable. *Howell* v. *Worth James Construction Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976); *Baker* v. *Bank of Northeast Arkansas*, 271 Ark. 948, 611 S.W.2d 783 (Ark. App. 1981).

The other reason suggested by the majority opinion to

support its conclusion that the mortgage holder should not have to credit the insurance proceeds on the mortgage debt in this case is that the Gaymans should not benefit indirectly by having their mortgage indebtedness paid when they could not recover directly from the insurance company. I fully agree with that reasoning and I suspect that it is the real reason for the general rule that the mortgage holder does not have to apply the insurance proceeds in reduction of the mortgage debt when the insurer has no liability to the mortgagor. Therefore, in the instant case, I would hold that the insurance obtained by the Gaymans, which also insured the mortgage holder's interest, would have to be applied to the payment of the mortgage on the property *except* as to the liability of the Gaymans. I would allow the insurance company to be subrogated to the mortgage holder's claim against the Gaymans since subrogation is an equitable doctrine having for its basis the doing of complete and perfect justice between the parties without regard to form, and its purpose and object being to prevent injustice. *See Baker* v. *Leigh*, 238 Ark. 918, 385 S.W.2d 790 (1965); *see also Crone* v. *Johnson*, 240 Ark. 1029, 403 S.W.2d 738 (1966) (the Arkansas Supreme Court said "principles of justice" permitted a court of equity to require a mortgage holder to apply insurance proceeds to monthly payments in order to prevent a default on the mortgage resulting in an "inequitable" acceleration of the maturity of the debt).

Based on the same equitable principles, I would not allow the insurance company to get its money back from Rogers and Buchanan who are not guilty of any wrongdoing and who should not have to repay the insurance company for the loss it was paid a premium to insure. No case allowing judgment against an innocent grantor under circumstances like those in the instant case has been cited by the parties or by the majority opinion, and I respectfully dissent in this one.