690 So.2d 1354 (1997)
NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, a Massachusetts corporation, Appellant,
v.
PODHURST, ORSECK, JOSEFSBERG, EATON, MEADOW, OLIN & PERWIN, P.A., Appellee.
Nos. 95-2746, 95-2366.
District Court of Appeal of Florida, Third District.
March 26, 1997.
Carlton, Fields, Ward, Emmanuel, Smith & Culter and John R. Hart, and Devon G. Coughlan, West Palm Beach, for appellant.
Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin; Joel S. Perwin, Miami, for appellee.
Before SCHWARTZ, C.J., and COPE and GODERICH, JJ.
COPE, Judge.
New England Mutual Life Insurance Company ("Lender") appeals two orders directing it to disburse escrowed insurance proceeds to appellee Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A. ("the Firm") for payment of the Firm's partial contingent fee. We reverse.

I.
This case originated as a suit against an insurer for coverage of property damage caused by Hurricane Andrew in 1992. P.P. Partners, Ltd., and Parkhill Partners, Ltd. ("Owners"), own two shopping centers which were insured by Affiliated FM Insurance Co. ("Insurer"). In 1993, the Owners brought suit against the Insurer for payment of the Hurricane Andrew claims ("the insurance lawsuit"). In 1994, the Owners retained the Firm to take over the case from predecessor counsel.
*1355 The Owners and the Firm entered into a contingent fee agreement. The Firm agreed to reduce its regular hourly rate somewhat, in exchange for a partial contingent fee of 20% of the insurance proceeds on the Parkhill Plaza property, and 15% on the Palm Plaza property.[1]
Appellant Lender held the mortgages on the two properties. The mortgage loans are nonrecourse. The Lender is a loss payee and additional insured on the insurance policies. Under the terms of the mortgages, the Lender is given substantial powers to direct how the insurance proceeds will be used.
The Firm obtained settlements from the insurance company of $1,651,280 for Parkhill Plaza and $565,000 for Palm Plaza.[2] The insurance checks were made payable jointly to the Owners and the Lender. By mutual agreement the checks were deposited in two escrow accounts, one for each shopping center. The accounts are titled in the joint names of the Firm (as agent for the Owners) and the Lender's Florida counsel (as agent for the Lender). Both must concur in order to disburse funds.
The Firm requested disbursement of its contingency share of the insurance proceeds. The Lender refused, stating that its interest in the insurance proceeds has priority over the attorneys fee claims. The Lender has directed that the insurance proceeds be applied first to reconstruction of the shopping centers. The Lender acknowledges that any surplus after reconstruction belongs to the Owners. The Lender states that the Firm's contingent fee can be paid from the surplus remaining after completion of construction, if any.
The Firm filed a motion seeking to impose an attorney's charging lien on the insurance proceeds. The Firm also requested a disbursement order directing that the insurance proceeds be disbursed from escrow to pay the Firm's contingent fees. In requesting this relief, the Firm did not file an independent lawsuit against the Lender. Instead, the Firm filed its motions in the pending insurance lawsuit even though the Lender was not a party to that suit.
The Firm sent its motions to the Lender's Florida counsel. The Lender appeared in the trial court, opposing the motions on jurisdictional grounds and on the merits.
The trial court ruled for the Firm, entering orders for disbursement of $200,000 and $147,538 from the two escrow accounts in satisfaction of the Firm's contingent fee claims. The Lender has appealed.

II.
The Lender's jurisdictional objection was well taken and should not have been overruled.
After the Lender received notice that the Firm was seeking an order to disburse the insurance proceeds from escrow to pay the Firm's contingent fee, the Lender appeared in the trial court and objected on jurisdictional grounds. The Lender argued that the Firm was attempting to obtain an adjudication of the respective rights of the Firm and the Lender to the insurance proceeds, without instituting an appropriate lawsuit for that purpose. The Lender reasoned that since the Lender was not a party to the underlying insurance lawsuit and had not otherwise submitted itself to jurisdiction in the underlying lawsuit, the trial court was without jurisdiction to adjudicate the competing claims to the insurance escrow.
The Firm counters that under Florida law, it was entitled to file notice of its charging lien in the underlying insurance lawsuit, which is where the Firm rendered its legal services. The Firm argues that it was perfectly appropriate to file a motion to determine the amount of its charging lien, and after doing so, to obtain an order for disbursement of the funds.
To resolve this dispute we must distinguish between (1) the Firm's claims against its own clients, the Owners, and (2) the Firm's claims against the nonparty Lender. The Firm followed *1356 appropriate procedure for the former, but not the latter.
The parties to the underlying insurance lawsuit were the Owners as plaintiffs, and the Insurer, as defendant. As a result of the Firm's work, a settlement was paid by the Insurer.
Under the Firm's fee agreement with the Owners, the Firm was entitled to a contingent share of the insurance proceeds. Consequently the Firm was entitled to a charging lien against its clients' interestthe Owners' interestin the insurance proceeds.
To establish its charging lien against its own clients, the Owners, the Firm was permitted to initiate a summary proceeding in the original action. See Daniel Mones, P.A. v. Smith, 486 So.2d 559, 561 (Fla.1986). "A summary proceeding in the original action represents the preferred method of enforcing an attorney's charging lien in Florida." Id. (citations omitted). That is so because the attorney and client are already before the court and subject to its jurisdiction. See 4 Fla.Jur.2d Attorneys at Law § 384, at 680 (1994). A summary proceeding represents a speedy and simple method to set the amount of the charging lien. However, the charging lien would attach only to the Owners' interest in the insurance proceeds.
The Firm's procedure was not proper with respect to the Lender. In addition to seeking relief against the Owners, the Firm sought to impose its charging lien on the Lender's interest in the insurance proceeds. By seeking a disbursement order, the Firm also sought a determination that the Firm's later-in-time interest in the insurance proceeds took priority over the Lender's first-in-time interest in the same proceeds.[3]
The procedural error was that in seeking this relief against the Lender, the Firm simply filed motions in the insurance lawsuit. The Lender was not a party to that lawsuit.
In order to try to impress a charging lien on the Lender's interest in the insurance proceeds, or obtain a determination that the Firm's charging lien was entitled to priority over the Lender's first-in-time interest in the proceeds, the Firm had to file an appropriate suit against the Lender. The Firm did not do so.
The Lender made a timely jurisdictional objection in the trial court. The Lender's objection should have been sustained.

III.
Because there must be further proceedings between these parties, we also address the merits.
The primary question is what rule of priority governs the competing claims to the insurance proceeds. The Lender's lien arose from the mortgage. The Lender's interest arose first in time, and was readily apparent because the Lender appeared as a loss payee on the insurance policy. The Firm's claim arose later in time.
In the hearing below, the trial court ruled that the Firm's later-in-time claim should prevail over the Lender's earlier-in-time lien. The court reasoned that the labor of the Firm had produced a recovery of insurance proceeds. Since the insurance recovery would be beneficial to the Lender as well as the Owner, the trial court concluded that the Firm's contingent fee claim would have priority over the Lender's earlier-in-time lien. It was immaterial to the trial court whether the Lender had consented to subordinate its interest to the Firm's attorney's fee claim. We are unable to agree with the trial court's analysis.
The general rule of priority is first in time, first in right. "The general rule that a security interest that is prior in time is superior to a later lien applies to attorneys' liens." Robert L. Rossi, Attorneys' Fees § 12:20, at 258 (2d Ed. 1995).
"A charging lien is subject to any rights in property which are valid against the client at the time the lien attaches, and the attorney's lien attaches only to the debtor's equity in the property." In re Hanson Dredging, Inc., 15 B.R. 79, 82 (Bankr. *1357 S.D.Fla.1981) (citation omitted); In the Matter of TLC of Lake Wales, Inc., 13 B.R. 593, 595 (Bankr.M.D.Fla.1981).
In Sureck v. United States Fidelity and Guaranty Co., 353 F.Supp. 807 (W.D.Ark. 1973), a law firm pursued fire insurance claims on a contingency basis and obtained a settlement. The law firm had not obtained the agreement of the lender, a building and loan association, to subordinate its earlier-in-time interest to the attorney's contingency fee claim. In declining to give the law firm priority, the court said:
When all is said and done, the Court concludes that the Firm when it undertook the representation of Sureck without making any arrangements with the Association, assumed the risk that its claim for compensation would turn out to be inferior to the claim of the mortgagee as far as insurance proceeds were concerned. To put it another way, while the Firm has unquestionably earned its fee, its claim to the insurance proceeds is subject to the contract rights of the Association. True, the efforts of the Firm benefited the Association as well as Sureck, but that fact alone is not sufficient to give the Firm's claim priority.
Id. at 809-11. That analysis is persuasive where, as here, the Lender has directed that the proceeds be used for reconstruction.
Because in the present case the Lender was a loss payee on the insurance policy, the Firm was chargeable with notice of the Lender's earlier-in-time claim to the insurance proceeds. The Owners' agreement to pay a contingency fee did not bind the Lender. In order for the Firm to obtain priority over the Lender, it was necessary for the Firm to obtain the Lender's consent.
The Firm argues that this court has held otherwise in Ginsberg v. Keehn, 550 So.2d 1145 (Fla. 3d DCA 1989), but that is not so. Ginsberg was a derivative suit seeking to undo a transaction in which a corporation's sole asset had been conveyed away for little or no consideration, in order to defraud one of the shareholders. Id. at 1146. Derivative counsel was awarded an attorney's fee. Based on the peculiar circumstances of that case, in which the holders of earlier-in-time liens were implicated in varying degrees with the fraudulent transaction, the trial court gave priority to the attorney's fee claim and subordinated the other liens. Id. at 1148. On appeal, this court declined to hold that the derivative attorney's fee would receive automatic priority over earlier-in-time liens. Id. at 1148. We affirmed the trial court's action in Ginsberg, however, because the specific facts of that case justified an equitable adjustment in the priorities of liens. Id.
The Firm argues that it should be given priority as a matter of equity. The Firm points out that the Lender will enjoy a benefit from the insurance proceeds, because the proceeds will be used to reconstruct the shopping center, thus enhancing the value of the property and preserving the security for the Lender's mortgages. That argument is not sufficient to change the order of priority. Under the mortgages, the Owners are obliged to maintain the property in good repair, at the Owners' expense. The burden is on the Owners in the first instance to make the post-hurricane repairs (whether there is insurance or not), and this obligation necessarily includes taking whatever steps are necessary to pursue the insurance proceeds. If we allow a shifting of priorities in these circumstances, in effect we allow the Owners' contingent fee agreement to bypass the Lender's earlier-in-time lien without obtaining the Lender's consent. We also observe that the notes in this case are nonrecourse, which means that the insurance proceeds must be looked to for reconstruction. This factor, too, weighs against disturbing the usual priority rule.[4]
It should also be noted that under section 627.428, Florida Statutes, an insured who successfully obtains judgment against its insurer in an insurance lawsuit is entitled to recover attorney's fees from the insurer. The purpose of the statute is to allow an insured to sue his or her insurance company and if successful, achieve a recovery without *1358 diminution on account of attorney's fees. The present case is not one in which it was essential for the law firm to look to a contingent share of the recovery in order to have any prospect of being paid. The Firm and the Owners were, of course, free to enter into a contingency fee agreement and we imply no criticism of them for having done so. However, the existence of the statute militates against disturbing the usual rules of priority.
In sum, the fact that the Firm recovered insurance proceeds is not sufficient to give it priority over the Lender's earlier-in-time lien, without the consent of the Lender. If further evidence shows that the Lender consented to give priority to the Firm's contingent fee, or agreed that the Firm's contingent fee should come "off the top" of the insurance recovery, then the Firm will be entitled to prevail.
The orders under review are reversed and the cause remanded for further proceedings consistent herewith.
NOTES
[1] The reduced hourly rate was $150.00.
[2] The insurance settlement also included $150,000 earmarked for attorney's fees, which has been paid to the Firm and evidently counts against the contingency share. This payment is not contested by the Lender.
[3] The Lender's interest in the insurance proceeds arose from the mortgage and also appeared on the face of the insurance policy. The Lender's interest thus arose earlier in time than the Firm's later legal services seeking recovery under the insurance policy.
[4] The Lender's objection to the contingent fee agreement is that it will diminish the insurance proceeds by 15% and 20% respectively, which may leave a shortfall in the funds needed to rebuild.